MATTER OF FOTOPOULOS

In Deportation Proceedings

A-17485345

*Decided by Board December 23, 1971 as amended January 19.
1972*

(1) Respondent, who at the time of admission for permanent residence was
not destined to and had no intention of taking up the employment as a
dye box operator covered by the labor certification then presented, and
who proceeded to another area and obtained other employment, is deporta-
ble for lack of a valid labor certification at entry.

(2) There is no authority in the statutory scheme for a *nunc pro tunc* de-
termination in deportation proceedings of respondent's alleged entitlement
at entry to an automatic labor certification under Schedule C—Precertifi-
cation List, as a maintenance mechanic. Respondent's admissibility at time
of entry, upon which his deportability now depends, must be judged in the
light of the validity of the labor certification he presented at that time.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251]—Excludable by
law existing at the time of entry—Section
212(a)(14) [8 U.S.C. 1182]—coming to perform
skilled or unskilled labor—no valid labor certifica-
tion.

ON BEHALF OF RESPONDENT:
Jonathan E. Avirom, Esquire
225 Broadway
New York, New York 10007

ON BEHALF OF SERVICE:
Robert A. Vielhaber
Appellate Trial Attorney

This case is before us on appeal from a special inquiry officer's
order of October 23, 1970, granting the respondent the privilege
of voluntary departure, but providing for his deportation from
the United States to Canada, alternatively to Greece, on the
charge contained in the order to show cause, in the event of his
failure to so depart. The special inquiry officer's decision will be
affirmed and the appeal dismissed.

The record relates to a 31-year-old single male alien, a native
and citizen of Greece, who last entered the United States on Jan-

uary 29, 1968. He was then admitted for permanent residence upon presentation of an immigrant visa supported by a certification from the Secretary of Labor. The latter document showed that he was destined to Hull Dye & Print Works, Inc., Derby, Connecticut, for employment as a Dye Box Operator, 40 hours per week, at a salary of $2.11 per hour, with time and one-half for overtime. He has, however, never worked for Hull Dye & Print Works, Inc., since his entry.

Upon entering this country, the respondent proceeded directly to the home of a cousin in New York City. Shortly after arrival there, he took employment installing aluminum siding on homes in the New York area. Thereafter, he obtained employment with the Continental Confectionery Company, also in the New York area, which he apparently still pursues. He has never obtained labor certifications covering either of these positions.

The respondent's primary contention is that the validity of the labor certification with which he gained entry is immaterial, on the theory that at the time of entry he was, in fact, entitled to an automatic labor certification under the Schedule "C" precertification list as a maintenance mechanic, as defined in Exhibit 7. The special inquiry officer has already rejected this argument, holding that the United States Consul in Canada and the Immigration and Naturalization Service at the port of entry were entitled to pass upon the respondent's claimed qualifications at the time he applied for his visa and admission into the United States, and that they were deprived of that opportunity by the respondent's representations that he was needed by the factory in Derby, Connecticut, and intended to take up residence and employment in that city. While we agree with the special inquiry officer's reasoning, we think brief additional comment will serve to point up its legal basis.

Section 212(a) (14) of the Immigration and Nationality Act, 8 U.S.C. 1182, provides generally that every alien coming to the United States to perform skilled or unskilled labor is required to be in possession of a labor certification. The statute does specify certain exceptions to the labor certification requirement, but the respondent does not fall within any of them. Hence, he was required to present a certification.

The various schedules set up by the Department of Labor are merely indicative of how a labor certification is obtained, i.e., whether an application for such a document has to be referred to the Labor Department on a case-by-case basis, or whether there is a shortage of employees which is so acute and well-known in a

848

particualr area that it can be certified on a mass basis. The latter, however, does not constitute a waiver of the labor certification requirement. Therefore, there is no authority in the statutory scheme for the *nunc pro tunc* determination respondent has, in effect, requested. Hence, his admissibility at the time must be judged in the light of the validity of the certification he presented at that time, as discussed below.

We find no factual or legal support for the respondent's concomitant contention that the special inquiry officer improperly found that he was not entitled to a precertified Schedule "C" certification as a maintenance mechanic, because he lacked the necessary qualifications. In the first place, while the special inquiry officer did express the opinion that respondent's varied and sporadic experience was not sufficient to qualify him for a labor certification as a maintenance mechanic under Schedule "C", he then proceeded to set forth the actual basis for his finding of deportability, as outlined above. Secondly, the authority of the special inquiry officer and this Board to determine the validity of labor certifications is clearly spelled out in *Matter of Welcome*, Interim Decision No. 1997 (BIA, 1969), the rationale of which is equally applicable here.

The sole remaining issue is whether the labor certification the respondent did present to gain entry was valid. In resolving this problem we must focus on the moment of his admission, because he is charged with deportability under section 241(a)(1) of the Immigration and Nationality Act. The key factor, then, is the Secretary of Labor's regulation, 29 CFR 60.5, which provides generally that the requisite labor certification is invalid if the representations upon which it is based are incorrect. Insofar as this particular case is concerned, that regulation limits the application of the labor certification under consideration to the position described in the job offer submitted in behalf of the respondent. Thus, the crux of this case is whether, at the time of entry, the respondent intended to comply with the terms of his admission, viz. to fulfill the obligations of section 212(a)(14) of the Immigration and Nationality Act. Specifically, the key question to be answered is whether, at entry, the respondent was destined to the certified job with the intention of taking up the specified employment.[1] For the following reasons, we are convinced that the special inquiry officer properly decided this question adversely to the respondent.

---

[1] *Matter of Cardoso*, Interim Decision No. 1963 (BIA, 1969).

The file contains a record of a sworn statement taken from the respondent on September 12, 1969, in which he admitted that he was aware of the fact that his lawyer had obtained a petition approved for him to work for the Hull Dye & Print Works and that he knew he was supposed to work for that concern when he came to the United States. The only explanation the respondent has given for his failure to proceed to Derby, Connecticut, and to take up the employment for which the labor certification had been issued was his belief that when he came to the United States as an immigrant he was not forced to work in any particular place. He stated that when he migrated from Greece to Canada no one told him he had to go to any particular job and he thought that the same conditions existed when he emigrated from Canada to this country. The statement also indicated that when he came to the United States he was financially in a bad way and that if he had gone to Derby, Connecticut, he would have had to look for an apartment or room to sleep in and that he did not have the financial means to do this because he would not have been paid for a week or so after starting to work. His cousin was in the city of New York and he went to his cousin instead, and was induced to take employment in the city of New York by his cousin. His testimony in the course of the hearing before the special inquiry officer was to the same effect.

We think the circumstances outlined above show clearly, convincingly and unequivocally that the respondent's intention at entry was not to comply with the certification provision of section 212(a)(14) of the Immigration and Nationality Act. To hold otherwise would, in our opinion, lead to the absurd result of permitting aliens to take the law into their own hands by using the labor certification to gain entry into this country so that they may thereafter accept any employment they can find. We are convinced that the Congress never intended such a possibility when enacting this legislation. Again, the crux of this case is whether when the respondent was admitted to the United States he had the intention of taking up the employment covered by the labor certification then presented, and we are convinced from the evidence recited that he did not. It is this element which distinguished the present case from that of *Cardoso, supra.*

Counsel argues that the last paragraph of our opinion in *Matter of Cardoso* indicates an alien's post-entry failure to take up the certified employment may be excusable, under certain circumstances. The inference he would have us draw, of course, is that this respondent's conduct was justifiable. The factual distinction

850

between the two cases, however, is readily apparent. In *Cardoso* the alien intended at the time of entry to take up existing certified employment, reported to that employment and only failed to accept it because of conditions subsequent. Here, on the other hand, the special inquiry officer has found, quite properly on this record, that the respondent at the time of entry did not intend to take up the certified employment. Thus, the respondent's post-entry failure to take up the certified employment supports the finding that he never intended to fulfill his employment contract in the first place.

In conclusion, as we have pointed out in *Matter of Aguirre,* Interim Decision No. 1940 (BIA, 1969), the execution of the special inquiry officer's order granting the respondent the privilege of voluntary departure has been stayed during the pendency of this appeal. Thus, the respondent still has a 30-day voluntary departure period granted him by the special inquiry officer, running from the date of our decision, within which to depart voluntarily and thereby avoid the automatic entry of the deportation order prescribed by the special inquiry officer.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

It is further ordered that, pursuant to the special inquiry officer's order, the respondent be permitted to depart from the United States voluntarily within 30 days from the date of this decision or any extension beyond that time as may be granted by the District Director and that, in the event of failure to so depart, the respondent shall be deported as provided by the special inquiry officer's order.