## MATTER OF KUO

### In Deportation Proceedings

#### A–18984949
#### A–34182005

*Decided by Board April 13, 1976*

(1) Male respondent conceded deportability as a nonimmigrant who had overstayed the authorized lergth of his visit and sought adjustment of status under section 245 of the Immigration and Nationality Act as beneficiary of a petition filed under § 203(a)(2) of the Immigration and Nationality Act as the spouse of an alien lawfully admitted for permanent residence (female respondent). Since the petition was never approved, male respondent did not qualify for adjustment of status under section 245 and 8 CFR 245.1(d), and was deportable under section 241(a)(2).

(2) Where alien's admissibility is based in part on issuance of a labor certification under 29 CFR 60.2 and 60.7, Schedule A, the alien's intention to pursue the certified job or profession at the time of entry controls the validity of the labor certification. Such alien professional must have a bona fide intention of engaging in the practice of the profession at least in the foreseeable future.

(3) Female respondent who denied deportability entered the United States as a non-preference immigrant based in part on a blanket labor certification she received as a nurse under 29 CFR 60.2 and 60.7, Schedule A. Female respondent has never worked as a nurse in the United States and since her arrival over 2½ years ago has been engaged in work totally unrelated to her profession. Under these circumstances an inference can be drawn that the alien never intended at the time of entry to engage in the certified profession. Where as here, no such intent has been shown, evidence of deportability under section 241(a)(1) as an alien excludable at time of entry for lack of a valid labor certification is clear, convincing and unequivocal.

CHARGE:

Order: Act cf 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer, student (male respondent).

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(2)]—Excludable at time of entry—no labor certification.

ON BEHALF OF RESPONDENTS:
Charles A. Magner, Esquire
732—15th Street, N.W., Rm. 222
Washington, D.C. 20005

Of Counsel:
William J. Lawler, Esquire
615 Montgomery Street, Suite 320
San Francisco, California 94111

ON BEHALF OF SERVICE:
James Smith
Appellate Trial Attorney

In a decision dated May 23, 1975, the immigration judge found both the male and female respondents deportable, but granted them the privilege of voluntary departure. The immigration judge also ordered termination of the proceedings as to the two minor children of the female respondent. The male and female respondents have appealed from the decision of the immigration judge. The Service has not appealed from the order of termination as to the minor children. The respondents' appeal will be dismissed.

The respondents, husband and wife, are both natives and citizens of the Republic of China. The male respondent has conceded deportability as a nonimmigrant who has overstayed the authorized length of his visit. The male respondent, however, seeks adjustment of status as a preference immigrant on the basis of his marriage to the female respondent, an alien who was lawfully admitted for permanent residence in February of 1972.

There is some question regarding the bona fides of the marriage between the male and female respondents. Evidently because of this question, the District Director has not approved the visa petition to classify the male respondent under section 203(a)(2) of the Immigration and Nationality Act as the spouse of an alien lawfully admitted for permanent residence. In the absence of an approved visa petition the male respondent cannot qualify for adjustment of status. See 8 CFR 245.1(d); 8 CFR 242.17(a); *Matter of Vilos*, 12 I. & N. Dec. 61 (BIA 1967). The male respondent is not presently eligible for adjustment of status and the immigration judge properly resolved this aspect of the case.

The female respondent has denied deportability. She was admitted to the United States as a nonpreference immigrant on February 7, 1972. Her admissibility was based in part upon the labor certification she received as a nurse under 29 CFR 60.2 and 60.7, Schedule A. The Service contends that the female respondent is deportable as an alien who was excludable at the time of her entry because her labor certification was not valid.

The Service does not presently challenge the female respondent's qualifications as a nurse in Taiwan. The Service, however, contends that the female respondent did not intend to pursue her profession as a nurse at the time of her entry. In this regard, we have held that the intention of the alien at the time of entry is controlling in determining the validity of the labor certification. See *Matter of Cardoso*, 13 I. & N. Dec. 228 (BIA 1969); *Matter of Ortega*, 13 I. & N. Dec. 606 (BIA 1970).

The female respondent appears to have had the equivalent of six years of formal training as a nurse in Taiwan and to have assisted in the instruction of student nurses for several years prior to her departure for the United States. The record indicates that while in Taiwan the female

651

respondent made inquiries to several states about the nursing requirements here in the United States. She directed her inquiries to California, New York, and Colorado, and discovered that each of these states required her to pass an examination before she could be licensed (see Tr. p. 22).

The female respondent, however, testified that she could work for a doctor in private practice without first being licensed (Tr. p. 22). Her immigrant visa (Ex. 2) contains a photocopy of what purports to be an "employment agreement" signed by a doctor who evidently practiced in the Los Angeles, California area. The female respondent testified that at the time of entry it was her intention to go to work for this doctor (Tr. p. 10). She also claims to have brought all her nursing paraphernalia with her to the United States (Tr. pp. 24-25).

The female respondent has not worked for this doctor, nor has she ever worked as a nurse in the United States. The female respondent evidently traveled from Taiwan by plane and arrived at San Francisco, California, where she was met by a friend. She testified that on the day after her arrival she telephoned the doctor who had offered to employ her (Tr. pp. 30-31). According to the female respondent, the doctor was not in his office and the female respondent left a message for him to call her back. She received no return call from the doctor. The female respondent also testified that she made no further attempts to contact the doctor because during this period of time she had been advised by a friend that her English was too poor for employment in a doctor's office in the United States. Within two to three weeks after her arrival the female respondent took a job as a waitress (Tr. pp. 28-29). She later quit that job and began operating what appears to be a dry cleaning business.

In support of her claim that she intended to be a nurse in the United States, the female respondent testified that she took English courses for nine months after her arrival, but she asserts that she had to give up these classes because of her health and for other personal reasons. The record contains photocopies of what appear to be enrollment or registration forms for courses taken in a San Francisco school. The forms, however, do not on their face indicate in what courses the female respondent was enrolled.

The female respondent also testified that she tried to get work at a Chinese hospital in San Francisco, but that she was rejected for this employment because she could not speak the Cantonese dialect of Chinese (Tr. p. 37). The hearing was held on two separate days separated by a period of approximately four months. The female respondent's testimony regarding an application for employment at a Chinese hospital occurred on the second day of the hearing. However, on the first day of the hearing, the female respondent had testified that she did

not apply for a nursing job in San Francisco with any Chinese hospital or doctor because she thought it better to learn English first (Tr. pp. 11–12).

On the second day of the hearing the female respondent also changed her testimony with respect to her initial plans on arriving in the United States. She initially testified that she arrived in the United States with a ticket good to only San Francisco, and that she planned to continue on to Los Angeles by bus or plane or otherwise, after a visit with her friend (Tr. p. 32). However, on the second day of the hearing the female respondent contended that she arrived with a ticket valid to Los Angeles, but that she was met at the airport and was convinced to stay briefly in the San Francisco area (Tr. pp. 39–42).

The immigration judge concluded that the female respondent was not a credible witness primarily on the basis of several lies she had told during a sworn question and answer interview with the Service investigator. See Exhibit 3 and Tr. pp. 8–9, 45. For example, during that question and answer interview, the female respondent testified that she worked one or two days for the doctor who sponsored her, but that she had to leave because of her children and because of the language barrier. See Exhibit 3, pp. 4–5. However, at her deportation hearing, she admitted that she had never worked for that doctor. See Tr. pp. 8–9.

We agree with the immigration judge that the testimony of the female respondent cannot in general be believed. Moreover, we specifically find incredible her story that she believed that she could work without being licensed for a private practitioner in California at the time of her entry (see Tr. p. 22). While in Taiwan, the female respondent received an instruction form from California regarding the licensing requirements of that state. The form she received clearly states that the licensing law in California is mandatory and that no one is permitted to practice as a graduate, trained or registered professional nurse without first being licensed. While the form she received is printed in English, the female respondent nevertheless appears to have had certain portions of the form translated into Chinese (see Exh. 6).

As we have indicated, in cases such as this, it is the alien's intention to pursue the certified job or profession at the time of entry which controls the validity of the labor certification. *Matter of Cardoso*, supra. *Matter of Ortega*, supra. In *Matter of Cardoso*, supra, we indicated that an alien's failure to take up or to continue in a particular job may give rise to a *suspicion* that the alien never intended to work in that job. However, in other cases involving aliens with labor certifications for particular jobs at specific locations, we have found that the failure to take up the certified employment was a very persuasive factor in determining the intent at the time of entry. See *Matter of Fotopoulos*, 13 I. & N. Dec. 847 (BIA 1971); *Matter of Santana*, 13 I. & N. Dec. 362 (BIA 1969).

The female respondent's case, however, does not fall precisely within the bounds of *Fotopoulos* and *Santana,* because her labor certification was not limited to one specific job with one specific employer. See generally *Matter of Tamayo,* 15 I. & N. Dec. 426 (BIA 1975). She came to the United States with a "blanket" labor certification provided by Schedule A of 29 CFR 60.7. A specific job offer is not a prerequisite to a Schedule A labor certification, and the validity of the female respondent's labor certification did not depend on her employment with the doctor who had offered to hire her in the Los Angeles, California area.

In addition, aliens who enter the United States with labor certifications as professionals or with blanket labor certifications are not required to engage immediately in the practice of their profession. *Matter of Ulanday,* 13 I. & N. Dec. 729 (BIA 1971); *Matter of Ortega,* supra; *Matter of Semerjian,* 11 I. & N. Dec. 751 (R.C. 1966). In the past, we have recognized that the alien professional may face licensing or other requirements preliminary to employment in the profession, and that the alien may be forced to take other employment for a short period of time before commencing professional practice in the United States.

Nevertheless, these cases do establish that an alien professional must have a bona fide intention of engaging in the practice of his profession, at least in the foreseeable future. In resolving the question of the alien's intent, a number of objective factors are relevant, including the alien's actions after entry. Thus, a strong inference can be drawn that an alien did not intend at the time of entry to engage in the certified profession, if after several years he has never practiced in the certified profession, and if shortly after entry he took up, and has continued in, totally unrelated employment. In such a case, it is incumbent upon the alien to go forward with the evidence and explain the failure to take employment in the certified field.

The female respondent entered the United States with a labor certification as a nurse. Shortly after her entry she took employment as a waitress. At the time these proceedings were instituted, more than two and a half years after her entry, she had not obtained any employment as a nurse. It was therefore incumbent upon her to explain why she had failed to become a nurse in the United States.

At the hearing, the female respondent attempted to explain her failure to practice her nursing profession. However, she has not presented any persuasive evidence in support of her story. Even her claim that she took English courses for nine months is not adequately supported. The school registration forms she supplied do not on their face indicate that the courses in which she enrolled were English courses, nor do they indicate that she actually attended any classes. Furthermore, the female respondent's present attempt to secure licensing in

California, initiated after the commencement of these proceedings, is too self-serving to be convincing.

The female respondent is not a credible witness. We do not believe her testimony that she attempted to contact the doctor who offered to employ her, nor do we believe that she made any other attempts to obtain employment as a nurse after her entry. At the time of her entry, the female respondent evidently knew that she could not obtain employment in California as a nurse because she was not licensed as such in that state. She may well have been willing to accept employment as a nurse should future circumstances permit her to be so employed. The Act, however, requires more; it requires that she have an affirmative intent at the time of entry to engage in her profession. We find that the female respondent had no such intention at the time of her entry. The evidence of deportability is clear, convincing and unequivocal.

The decision of the immigration judge was correct and the appeal will be dismissed.

ORDER: The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondents are permitted to depart from the United States voluntarily within 13 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondents shall be deported as provided in the immigration judge's order.