175 F.3d 1129
 99 Cal. Daily Op. Serv. 3172, 1999 Daily
Journal D.A.R. 4150
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE 1997 MERCEDES, E420; One 1992 Mercedes Benz 500 Sl;
One 1997 Chevrolet Tahoe, Defendants.
Ricky Black and Tara Rudd, Claimants-Appellants.
 
 No. 98-55142.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 3, 1999.
Filed May 3, 1999.
 Janet Sherman, Sherman, Sherman & Boyle, and Paul L. Gabbert, Santa Monica, California, for the claimants-appellants.
 Steven R. Welk, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California William J. Rea, District Judge, Presiding. D.C. No. CV-97-05076-WJR.
 Before: BROWNING, WIGGINS, and GRABER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Ricky Black and his girlfriend, Tara Rudd, ("Claimants") appeal from the denial of their motion to dismiss the government's civil forfeiture complaint for failing to comply with 21 U.S.C. § 888(c), which requires the government to file a complaint seeking forfeiture of conveyances seized for a "drug-related offense" within 60 days after the claimant files a claim and cost bond. We must determine whether the laundering of drug money qualifies as a "drug-related offense" for purposes of 21 U.S.C. § 888(c). We conclude that it does in this case and, therefore, we reverse.
 
 I.
 
 2
 Ricky Black ("Black") is an "exotic car" dealer who allegedly used his business to launder money for a drug trafficking organization.[1] Members of the drug ring gave Black cash proceeds from drug sales, which Black deposited into his account in amounts small enough to evade federal reporting requirements (i.e., under $10,000). Black then purchased cars with the drug money, "leased" them to members of the drug ring under sham lease agreements, and registered the cars under false names (or failed to register them at all) to conceal the vehicles' true ownership. Black retained a commission of 7% of the purchase price of each car.
 
 
 3
 On February 20, 1997, Los Angeles Police raided the apartment of Charles Dorsey, a suspected member of the drug ring, and seized cocaine, cash, and a 1997 Mercedes Benz E420. The Mercedes had paper license plates bearing the name "Black on Black," the business name of Black's car dealership. DEA agents subsequently raided Black's residence and seized two additional vehicles: a 1992 Mercedes Benz 500SL and a 1997 Chevrolet Tahoe.
 
 
 4
 On July 11, 1997, the government filed a civil forfeiture action against the three vehicles,[2] alleging two claims: (1) the vehicles were purchased with drug money, subjecting them to forfeiture under 21 U.S.C. § 881(a)(6); and (2) the vehicles were involved in a transaction designed to conceal the fact that they were purchased with drug money (i.e., they were part of a money laundering scheme), subjecting them to forfeiture under 18 U.S.C. § 981(a)(1)(A).
 
 
 5
 On September 23, 1997, Claimants filed claims asserting ownership of the seized vehicles. Claimants subsequently filed a motion to dismiss the government's complaint on the ground that the government had failed to comply with 21 U.S.C. § 888(c), which requires the government to file a complaint in forfeiture within 60 days after a claim and cost bond have been filed.[3] The district court granted the motion with respect to the first claim, but denied it with respect to the second. Claimants appeal.[4]
 
 II.
 
 6
 The government does not dispute that its complaint was filed more than 60 days after Claimants contested the seizure of the vehicles, nor does it dispute that its first claim (premised on 21 U.S.C. § 881-proceeds traceable to drug money) properly was dismissed. The government's sole contention is that its second claim (premised on 18 U.S.C. § 981-money laundering) is exempt from the 60-day filing requirement, because (1) money laundering is not a "drug-related offense," and (2) the money laundering forfeiture statute is part of a "distinct and separate" statutory framework unaffected by the 60-day rule.
 
 A.
 
 7
 The 60-day filing requirement applies to conveyances "seized for a drug-related offense." 21 U.S.C. § 888(c). The term "drug-related offense" is defined as "any proscribed offense which involves the possession, distribution, manufacture, cultivation, sale, [or] transfer ... [of] any substance the possession of which is prohibited by Title 21, U.S.C." 21 C.F.R. § 1316.91(d). The government argues that this definition does not include violations of 18 U.S.C. § 1956(a)(1), because money laundering is a financial crime that may or may not involve drug proceeds.
 
 
 8
 Money laundering requires proof of three elements: (1) the defendant conducted a financial transaction that "in fact involve[d] the proceeds of specified unlawful activity"; (2) the defendant knew that the property involved was the proceeds of some form of unlawful activity; and (3) the defendant knew that a transaction he engaged in was for the purpose of concealing or disguising ownership or control of ill-gotten proceeds. 18 U.S.C. § 1956. Because the term "specified unlawful activity" includes both drug-related offenses (e.g., drug trafficking) and non-drug-related offenses (e.g., murder, kidnapping),[5] the facts and circumstances of each case determine whether a given money laundering offense is "drug-related" (i.e., whether the offense "involves the possession, distribution, manufacture, cultivation, sale or transfer [of drugs]").
 
 
 9
 The government's complaint alleged that the vehicles were purchased with illegal drug proceeds in the course of a money laundering operation:
 
 
 10
 Based on the facts set out herein, there is probable cause to believe that the defendant vehicles were purchased with proceeds of a specified unlawful activity under 18 U.S.C. § 1956, i.e., narcotics trafficking, and were involved in one or more transactions designed to conceal or disguise the nature, source, ownership and control of the proceeds used to make the purchase, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).
 
 
 11
 (Compl. p 38 (emphasis added).) Because narcotics trafficking expressly is the "specified unlawful activity" underlying the government's claim, the money laundering statute requires proof that the vehicles were part of a financial transaction which "in fact involve[d]" drug proceeds. See 18 U.S.C. § 1956(a)(1). Thus, the government's argument that the vehicles were not seized for a "drug-related offense" is unavailing.
 
 B.
 
 12
 The government's second argument is that the 60-day filing requirement, which is found in Title 21, does not apply because the government is seeking forfeiture under the money laundering statute, which is part of distinct statutory framework found in Title 18. See 18 U.S.C. §§ 981, 1956(a)(1). Claimants counter that the broad definition of "drug-related offense" evinces an intent to apply the 60-day filing requirement without regard to the precise statute or legal theory on which the government proceeds.
 
 
 13
 The Seventh Circuit addressed a similar issue in United States v. Indoor Cultivation Equipment from High Tech Indoor Garden Supply, 55 F.3d 1311 (7th Cir.1995). In that case, the government argued that the 60-day rule applied to 21 U.S.C. § 881(a)(4), but not to 21 U.S.C. § 881(a)(6). See id. at 1314. The court rejected the government's argument for two reasons: (1) section 888(c) does not refer to a specific forfeiture provision in its text, and "it is not for this court to rewrite the statute and drastically curtail its scope. By using the phrase 'for a drug-related offense,' Congress seems to have intended a broad application for the procedural protections of § 888 rather than the narrow reach ascribed to the statute by the government," id. at 1315; and (2) "Congress enacted the expedited provisions of § 888 'to minimize the adverse impact on those entitled to legal or equitable relief occasioned by the prolonged detention of their conveyances following their seizure for a drug-related offense,' " id. at 1315-16 (quoting 21 C.F.R. § 1316.90) (alterations omitted), and there is no indication that Congress intended to restrict section 888(c)'s application to one particular forfeiture statute, see id. at 1316.[6]
 
 
 14
 We agree with the Seventh Circuit that an overly-narrow construction of section 888(c) would frustrate the statute's remedial purpose and allow the government to circumvent the 60-day rule simply by basing its complaint on a specific legal theory, statute, or title of the U.S.Code. Had Congress intended to restrict section 888(c) to forfeiture proceedings commenced under Title 21, or under another specific statute, it presumably would have done so. See, e.g., Central Bank v. First Interstate Bank, 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ("If ... Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.").
 
 
 15
 We conclude that this action is governed by section 888(c). Because the government did not file its complaint within 60 days after Claimants filed their claim and cost bond, "the court shall order the return of the conveyance [s] to the owner and the forfeiture may not take place." 21 U.S.C. § 888(c).[7]
 
 
 16
 REVERSED.
 
 
 
 [1]
 The facts are drawn from the government's complaint. Because the court is reviewing an order granting in part and denying in part a motion to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), all allegations of material fact stated in the complaint are taken as true and construed in the light most favorable to the nonmoving party. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1990)
 
 
 [2]
 A fourth vehicle-a 1997 Mercury Grand Marquis-also was named in the complaint, but the government voluntarily dismissed it from the action pursuant to Fed.R.Civ.P. 41(a)(1)
 
 
 [3]
 Section 888(c) provides:
 Not later than 60 days after a claim and cost bond have been filed under section 1608 of Title 19 regarding a conveyance seized for a drug-related offense, the Attorney General shall file a complaint for forfeiture in the appropriate district court, except that the court may extend the period for good cause shown or on agreement of the parties. If the Attorney General does not file a complaint as specified in the preceding sentence, the court shall order the return of the conveyance to the owner and the forfeiture may not take place.
 21 U.S.C. § 888(c).
 
 
 [4]
 Pursuant to Fed. R.App. P. 5, Claimants received permission from the Ninth Circuit to file this interlocutory appeal
 
 
 [5]
 The term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title." 18 U.S.C. § 1956(c)(7)(A). Section 1961(1) includes murder, kidnapping, and other non-drug-related offenses, as well as "any act ... involving ... dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act)...." 18 U.S.C. § 1961(1)
 
 
 [6]
 The Seventh Circuit explained:
 Section 888 was intended to protect innocent owners of seized conveyances; it makes no difference to the innocent owner who needs his or her car back whether the government seized it under one theory or another. The government's interpretation of § 888(c) implies that Congress was more concerned with protecting the innocent owners of conveyances seized under § 881(a)(4) than innocent owners of conveyances seized under § 881(a)(6). No evidence exists that it was. Quite clearly, the owners of conveyances seized under either theory face the same potential hardships.... [I]t defies common sense to believe that Congress intended to eliminate the problems with respect to one group of conveyances and not with respect to the other, subjecting one group to the same slow disposition that prevailed before § 888 was enacted.
 Id. at 1316.
 
 
 [7]
 Section 888(c) provides a "good cause" exception to the 60-day rule. See 21 U.S.C. § 888(c) ("[T]he court may extend the period for filing for good cause shown or on agreement of the parties."). Although the government contends that Black purchased the vehicles as part of a "complex" scheme involving "numerous money laundering transactions," it has not attempted to invoke the "good cause" exception