**Amma AMOAKOWAA, Plaintiff,**

v.

**Janet RENO, Attorney General of the United States of America, and Brian Perryman, District Director, Immigration and Naturalization Services, Defendants.**

### No. 99 C 1843.

United States District Court,
N.D. Illinois,
Eastern Division.

March 24, 2000.

Fred Amoakohene, Chicago, IL, for Plaintiff.

James G. Hoofnagle, Jr., Special Asst. U.S. Atty., Chicago, IL and David W. Ogden, Acting Asst. Gen. Civ. Div., John J. Andre, Sr. Litigation Counsel, and Steven J. Kim, Trial Atty., Office of Immigration Lit., Civ. Div., U.S. Dept. of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

COAR, District Judge.

Amma Amoakowaa ("Amoakowaa"), a native and citizen of Ghana, filed an application to become eligible to receive an immigrant visa. Her application was denied because of an alleged clerical error. Amoakowaa challenges the denial of her application. Janet Reno, Brian Perryman, and the Immigration and Naturalization Services ("INS") (collectively, "Defendants") move this Court to dismiss Amoakowaa's complaint pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated herein, this case is dismissed for lack of subject matter jurisdiction.

## I. Background

In 1990, Congress promulgated a Diversity Immigrant Visa Program ("Diversity Program"), under which a limited number of immigrant visas were made available to individuals from countries with historically low immigration admissions into the United States. For each fiscal year from 1995 to 1998, Congress made 55,000 visas available to diversity immigrants and their family members. Individuals wishing to be considered for the Diversity Program were required to first submit a petition. At the close of the application period, a computer randomly selected applicants who were eligible to apply for a diversity visa. The selected applicants were then instructed to apply for a diversity immigrant visa for that particular fiscal year. Being selected to apply, however, by no means guaranteed the applicant a visa. Rather, the number of applicants selected by the so-called "visa lottery" far exceeded the number of diversity visas available for the particular fiscal year, so in the end, some selected applicants were not able to secure a visa.

Pursuant to the Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225 (1994), applicants who were present in the United States in lawful status were qualified to apply to the INS to adjust their status. The Attorney General was given the discretion to adjust the status of a diversity immigrant to an alien lawfully admitted for permanent residence if the alien qualified under the relevant provision. *See* INA § 235, 8 U.S.C. § 1225(a)(1994). An applicant for a diversity immigrant visa, however, was not eligible for an adjustment of status until she had been approved by the INS after an interview, and by the Federal Bureau of Investigations after a fingerprint clearance. Only after these prerequisites were satisfied was a visa number be issued, if available for the applicable fiscal year.

Approved diversity visa petitions were valid only until the midnight of the last day of the fiscal year for which the application was submitted. Accordingly, selected diversity visa applicants who sought to adjust their status were required to have their adjustment applications completed and adjudicated upon while their visa number was still valid; that is, prior to the expiration of the fiscal year for which their application was selected.

On February 1, 1997, Amoakowaa entered the United States without being inspected by an immigration officer. On October 28, 1997, Amoakowaa filed an Application to Register Permanent Residence or Adjust Status, Form I–485. She was selected to apply for a diversity immigrant visa for the fiscal year 1998 ("FY98"). Amoakowaa's interview was scheduled for September 22, 1998, eight days before the end of FY98. According to Amoakowaa, the INS informed her at the interview that her fingerprints had expired and that she needed to obtain new fingerprints. Amoakowaa states that she submitted two fingerprints to the INS, once with her initial application and then again when requested by the INS at her interview. In a letter dated September 30, 1998, the FBI informed the INS that Amoakowaa's fingerprints had not been received. On January 26, 1999, the INS denied Amoakowaa's adjustment application because it was not adjudicated and completed during FY98.

## II. Standard of Review

Unlike the state courts, the federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). Federal courts are conferred jurisdiction to review a case if authorized by the Constitution or by statute. *Id.* The presumption is that a cause of action lies outside this limited scope of jurisdiction. *Id.* The burden of establishing a jurisdictional basis rests upon the party asserting jurisdiction. *Id.* Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the court to dismiss a case for lack of subject matter jurisdiction.

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends upon the

purpose of the motion. *See Freiburger v. Emery Air Charter, Inc.,* 795 F.Supp. 253, 256 (N.D.Ill.1992). Where the motion simply challenges the sufficiency of the allegations of subject matter jurisdiction, the court must accept as true all well-plead factual allegations and draw all reasonable inferences in favor of the plaintiff. *United Transp. Union v. Gateway Western Ry. Co.,* 78 F.3d 1208 (7th Cir.1996). If, on the other hand, the motion denies the truth of the allegations, the court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993). Dismissal is proper is it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle her to the relief requested. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### III. Analysis

The Supreme Court has declared that Congressional authority to "prescribe the terms and conditions upon which [aliens] may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications." *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). *See also INS v. Aguirre–Aguirre,* 526 U.S. 415, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context....") The Court is mindful of the well-settled principle that the judiciary should "not interfere with the visa issuing process." *Wan Shih Hsieh v. Kiley,* 569 F.2d 1179, 1181 (2d Cir.1978). That said, this case must be dismissed because this Court lacks subject matter jurisdiction. First of all, § 242(a)(2)(B)(i) of the INA, 8 U.S.C. § 1252(a)(2)(B)(i) (Supp. III 1997) ("§ 242(a)(2)(B)(i)") precludes this Court from reviewing Amoakowaa's claim. In addition, Amoakowaa fails to articulate a colorable constitutional

claim over which this Court may exercise jurisdiction. Lastly, the Declaratory Judgment Act ("DJA") does not save this action from being dismissed.

Section 242(a)(2)(B)(i) expressly divests this Court of jurisdiction to review a denial of an application for adjustment of status. *See Diallo v. Reno,* No. 1:99–CV–378–CAM, 1999 WL 652097, at *5 (N.D.Ga. July 29, 1999) (dismissing claim for review of denial of adjustment status); *Zheng v. McElroy,* No. 98–1772, 1998 WL 702318, at *5 (S.D.N.Y. Oct. 7, 1998). That section provides, in relevant part, "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any judgment regarding the granting of relief under section ... 245 [governing adjustment of status]." INA § 242(a)(2)(B)(i). Although Amoakowaa argues that the above provision is only applicable to judgments rendered by immigration judges and conversely, inapplicable to the decisions of immigrations officials, the Court finds that this contention is without legal support.

In the alternative, Amoakowaa asserts that this Court may exercise jurisdiction over her claim pursuant to INA § 106(a), 8 U.S.C. § 1105a(a) (1994) (repealed) (" § 106"). Section 106, repealed on September 30, 1996, was replaced by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Under the transitional rules established by the IIRIRA, 106(a) applies to aliens who were placed in deportation proceedings prior to April 1, 1997, and whose deportation orders became administratively final on or after October 31, 1996. IIRIRA § 309(c), 110 Stat. at 3009–625, 626; *Sofinet v. INS,* 188 F.3d 703, 705 (7th Cir.1999). Because Amoakowaa does not qualify under § 106(a), § 242(a)(2)(B)(i) governs, thereby removing this case from the scope of this Court's review. Similarly, the cases to which Amoakowaa cites to assert a right to bring her action before this Court arose under the now-repealed regime of laws. As such, the cited cases

are no longer applicable. *See, e.g., Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Jaa v. United States*, 779 F.2d 569 (9th Cir.1986); *Reid v. INS*, No. 91 Civ. 6535, 1993 WL 267278 (S.D.N.Y. Nov.7, 1993).

Furthermore, Amoakowaa attempts to invoke this Court's jurisdiction by claiming a violation of Constitutional rights. She alleges that Defendants violated the Fifth Amendment Due Process clause by depriving her of the "right to be given fair treatment when she applies for a benefit provided by Congress." (Pl. Resp. at 6). This asserted interest, however, is not cognizable under the Constitution. The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, property without due process of law." This protection extends to all persons, including aliens, within the borders of the United States. *Knoetze v. United States*, 634 F.2d 207, 211 (5th Cir. Unit B 1981). For a plaintiff to seek redress for a due process violation, then, she must first assert a property or liberty interest. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ The courts have made clear that alien-plaintiffs have no constitutionally-protected interest in immigrant visas or the procedures by which such visas are obtained. *De Avilia v. Civiletti*, 643 F.2d 471, 477 (7th Cir.1981) ("Visa applicants have no vested right in the issuance of visas"); *Azizi v. Thornburgh*, 908 F.2d 1130, 1134 (2d Cir.1990) ("[Plaintiffs] cannot succeed on their due process challenge because they do not have an inherent property right in an immigrant visa."); *Legal Assistance for Vietnamese Asylum Seekers v. Dept. of State, Bureau of Consular Affairs*, 104 F.3d 1349, 1353 (D.C.Cir.1997) ("[Plaintiffs] may not assert a Fifth Amendment right in challenging the procedures for granting immigrant visas."); *Rahman v. McElroy*, 884 F.Supp. 782, 786 (S.D.N.Y.1995) ("Simply put, plaintiffs do not have a constitutionally-protected interest in an immigrant visa-let alone in a particular adjustment interview

date"). *See also Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional right regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.") As with her due process claim, Amoakowaa fails to present a colorable equal protection claim. Accordingly, Amoakowaa is precluded from proceeding on her constitutional claims.

■ In addition, to the extent that Amoakowaa relies on the Declaratory Judgment Act to establish this Court's jurisdiction, her reliance is misplaced. The DJA "does not confer jurisdiction but rather, provides an additional remedy where jurisdiction already exists." *Balanyi v. Local 1031, Int'l Brotherhood of Elec. Workers AFL–CIO*, 374 F.2d 723, 725 (7th Cir.1967). *See also Schilling v. Rogers*, 363 U.S. 666, 677, 80 S.Ct. 1288, 1295, 4 L.Ed.2d 1478 (1960) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950)); *Pabst Brewing Co., Inc. v. Corrao*, 161 F.3d 434, 438 (7th Cir.1998); *Chicago Truck Drivers, Helpers and Warehouse Workers Union v. Nat'l Mediation Bd.*, 670 F.2d 665, 670 n.7 (7th Cir.1981). As discussed above, there is no independent jurisdictional base for this claim. Therefore, Amoakowaa's complaint is dismissed for lack of jurisdiction.

Defendants also argue that Amoakowaa's complaint fails to state a claim upon which relief can be granted. At this point, that discussion is rendered moot. On a final note, the Court is not unsympathetic to Amoakowaa's situation. This Court's hands, however, are tied to the extent that we may only exercise jurisdiction where it is granted us.

## IV. Conclusion

For the foregoing reasons, Amoakowaa's complaint is dismissed under Fed.R.Civ.P.

12(b)(1) for lack of subject matter jurisdiction. This case is closed.