**Veronica MART; et al., Plaintiffs,**

**v.**

**David BEEBE, Director of United States Immigration & Naturalization Service; et al., Defendants.**

**Civil No. 99–1391–JO.**

United States District Court,
D. Oregon.

May 15, 2000.

John S. J. Marandas, John S. Marandas, P.C., Portland, OR, for Plaintiffs.

Craig J. Casey, Assistant United States Attorney, District of Oregon United States Attorney's Office, Portland, OR, for Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiffs seek declaratory judgment and injunctive relief from the decision of the Immigration and Naturalization Service (INS or defendant) to deny plaintiff Veronica Mart's application for adjustment of status under § 245 of the Immigration and Nationality Act (INA). 8 U.S.C. § 1255.

## RELEVANT FACTS AND PRIOR PROCEEDINGS

Plaintiffs Veronica Mart and her husband, Julian Mart, are Romanian citizens who wish to obtain permanent residence in the United States. They first came to the United States in October, 1991, as non-immigrant visitors. Mr. Mart promptly applied for asylum, claiming persecution by the communist regime then ruling Romania. While waiting two years for a decision on his asylum application, plaintiffs' visas expired.[1] In October, 1993, the INS initiated deportation proceedings; plaintiffs applied for, and were granted, permission to voluntarily return to Romania. In 1995, Mr. Mart received a B-1 work visa and he and his family returned to the United States.[2] Except for remaining in the United States with an expired visa, plaintiffs have avoided legal troubles during their approximately nine year presence in this country.

In 1999, the INS notified Ms. Mart that her name had been chosen in that year's Diversity Immigrant Visa lottery. Under the laws and regulations implementing the Diversity Immigrant Visa program, a person who is selected and then submits a fee may[3] receive an adjustment of status to permanent resident provided that (1) the applicant applies for adjustment, (2) the applicant is statutorily eligible for adjustment and (3) a visa number is available at the time that person's application is approved. *See* INA § 245(a), 8 U.S.C. § 1255(a).

Ms. Mart timely paid her fee and submitted an application but was denied an adjustment of status because the INS found that her presence in the United States after her visa expired in 1992 made her statutorily ineligible for an adjustment. Letter Ruling from David Beebe, INS District Director, to Veronica Mart and Family (August 16, 1999). When Ms. Mart petitioned the INS to reconsider its decision, the agency declined her request and further found that Ms. Mart and her husband "manipulated the system to gain an unfair advantage over other aliens" by not disclosing in their first visa application their preconceived intent to apply for asylum. Letter Ruling from David Beebe, INS District Director, to Veronica Mart and Family (September 20, 1999).

Ms. Mart disputes both the factual and legal bases for the INS decision to deny her application for adjustment of status and asks this court to hear her claims. If this court does not hear her claim, she will

---

1. Had the INS granted the Marts' asylum request, it would have considered their time in the United States while their visas were expired permissible. *See* 8 CFR § 245.1(c)(1)(iv). But when an application for asylum is denied, the INS does not excuse an applicants' overstay.

2. Mr. Mart works as a mechanical engineer for Yamamoto of America, Inc. Mrs. Mart is also an engineer.

3. A grant of adjustment of status is fully discretionary, even if an applicant satisfies the three requirements for eligibility.

have no other legal recourse. She is free to apply each year for the visa lottery, but the INS has represented to the court that she likely will be denied adjustment in the future for the same reason the INS denied her adjustment in 1999.[4] The INS concedes that the law provides for Circuit court review of INS decisions at the time of a removal proceeding. Aliens facing removal may also petition the district court through a writ of habeas corpus.[5] However, only the INS can initiate a removal proceeding and the INS represented to this court in a hearing held October 8, 1999, that it was unlikely to do so against plaintiffs in the reasonably near future. And even if the INS were to initiate removal proceedings, and Ms. Mart were to prevail then on her claim, any relief available would likely be inadequate since she cannot adjust status unless a visa number is available for her and no visa number would be available unless she coincidentally won the visa lottery during that year. Ms. Mart therefore asks this court to rescue her from legal limbo by reviewing the non-discretionary factual and legal findings of the INS at this time and, if appropriate, ordering that agency to remove any bar to her being eligible for adjustment of status should her application be selected again in the future.

The INS agrees in essence with plaintiff's characterization of her legal rights, but insists that she has received all the review to which she is entitled under the INA. The government has moved pursuant to Fed.R.Civ.P. 12(b)1 to dismiss plaintiffs' amended complaint on the grounds that this court lacks subject matter jurisdiction to review any decision made pursuant to an application for adjustment of status.

## STANDARD

Where a Rule 12(b)1 motion challenges the sufficiency of the allegations of subject matter jurisdiction, the court must accept as true all well-plead factual allegations and draw all reasonable inferences in favor of the plaintiff. *U.S. v. One 1997 Mercedes E420*, 175 F.3d 1129, 1130 (9th Cir.1999). Dismissal is proper only if it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle her to the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

The Ninth Circuit has previously held that the district court has jurisdiction to review the INS' denial of an adjustment of status not involving deportation. *See Tang v. Reno*, 77 F.3d 1194, 1196 (9th Cir.1996)(jurisdiction pursuant to 28 U.S.C. § 1331). However, the Ninth Circuit decided *Tang* before Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 ("IIRIRA"), on September 30, 1996. IIRIRA contained both temporary and permanent provisions that amended the jurisdictional provisions of the INA. In at least one post-IIRIRA decision, the Ninth Circuit reiterated its holding that "district courts have jurisdiction over final orders of the INS that do not involve deportation itself." *Abboud v. Immigration and Naturalization Service*, 140 F.3d 843, 846 (9th Cir. 1998). But in that case, the Court interpreted the transitional provisions of IIRIRA, not the final rules, which apply to all cases arising after April 1, 1997.[6]

---

4. In deciding whether to grant an adjustment, the INS is not bound by its previous findings or decisions.

5. Circuits are split as to whether district courts have 28 U.S.C. § 2241 jurisdiction over removal proceedings. *Compare Liang v.*

*INS*, 206 F.3d 308, 317 (3rd Cir.2000)(affirming district court habeas jurisdiction over removal proceedings), *with Richardson v. Reno*, 180 F.3d 1311, 1315 (11th Cir.1999) and *Max–George v. Reno*, 205 F.3d 194, 198 (5th Cir.2000).

Defendant asserts that the permanent IIRIRA amendments to the Immigration and Nationality Act (INA) at § 242(a)(2)(B), which apply to plaintiffs' case, stripped the district courts of subject matter jurisdiction over, among other things, denials of applications for adjustment of status. Whether IIRIRA divested the district court of jurisdiction over denials of adjustment of status not involving removal is a question of first impression in this Circuit, and one that this court must now address.[7]

INA § 242(a)(2)(B), entitled "Denials of discretionary relief," provides that:

Notwithstanding any other provision of law, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or **1255 [adjustment of status]** of this title [Title 8. Aliens and Nationality], or (ii) any other decision or action of the Attorney General the authority for which is specified under this chapter [Chapter 12—Immigration and Nationality] to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

(Emphasis added).

 When interpreting statutory language of the INA, the court applies es-

tablished canons of statutory construction, including those specifically applicable to immigration statutes. Ambiguities in the law are interpreted in favor of the alien. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). Restrictions on jurisdiction are construed narrowly, and the court will not assume that its jurisdiction has been repealed unless the statute says so explicitly. *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991).

That INA § 242(a)(2)(B) divests jurisdiction in some context is beyond reasonable dispute. The subsection could hardly be more explicit in that regard.[8] Whether the subsection applies outside the context of removal proceedings, however, is a much closer question.

Prior to passage of IIRIRA, INA § 242 was entitled "Apprehension and deportation of aliens," and had nothing to do with judicial review. 8 U.S.C. § 1252 (1995). INA § 106 was entitled "Judicial review of orders of deportation and exclusion", and contained the exclusive procedures for obtaining judicial review of "all final orders of deportation." 8 U.S.C. § 1105(a) (1995). IIRIRA repealed INA § 106 and substituted the new INA § 242, entitled "Judi-

---

**6.** The transitional rules applied between the time Congress passed IIRIRA and April 1, 1997. The relevant transitional provision provided that "there shall be no appeal of any discretionary decision" under INA § 245. *See* IIRIRA § 309(c)(4)(E).

**7.** A majority of jurisdictions that have decided this issue have held that INA § 242(a)(2)(b)(i) precludes judicial review of a [8 U.S.C.] § 1255 denial of adjustment of status. *See e.g. Van Dinh v. Reno*, 197 F.3d 427, 432 (10th Cir.1999); *Amoakowaa v. Reno*, 94 F.Supp.2d 903 (N.D.Ill.2000); *Paunescu et al. v. Immigration & Naturalization Service*, 76 F.Supp.2d 896, 900 (N.D.Ill.1999); *Diallo v.*

*Reno*, 61 F.Supp.2d 1361, 1367 (N.D.Ga. 1999); *but see Shanti v. Reno*, 36 F.Supp.2d 1151, 1158 (D.Minn.1999)(holding that INA § 242 confined in scope to orders of removal).

**8.** The Ninth Circuit, however, recently held that identical language in INA § 242(a)(2)(C), entitled "Orders against criminal aliens," did not divest the district court of habeas jurisdiction pursuant to 28 U.S.C. § 2241. *Liang v. Immigration & Naturalization Service*, 206 F.3d 308, 317 (3rd Cir.2000)(stating that a repeal of habeas jurisdiction will not be found by implication). Habeas relief is not available in cases like this one where the plaintiff is not in custody or facing deportation.

cial review of orders of removal." [9] This court gives credence to that section's title, and finds that Congress intended that INA § 242 apply only in the context of removal proceedings.

Before IIRIRA, the law of the Ninth Circuit held that INA § 106 did not apply outside of removal proceedings.[10] Nothing in the legislative history indicates that Congress intended, when it replaced INA § 106 with the new INA § 242, to expand the applicability of the new section to final INS orders not involving removal. On the contrary, the House Conference Report explained that the new INA § 242 was similar in scope to the INA § 106 it was intended to replace:

> Section 242(a) provides that a final order of removal, other than an order of removal under section 235(b)(1) [8 U.S.C. § 1225(b)(1) (providing for expedited removal of inadmissable arriving aliens) ], is governed by chapter 158 of title 28 [entitled "Orders of Federal Agencies; Review"]. **This is consistent with current section 106(a).**

H.R. Conf. Rep. No. 104–828, 104th Cong., 2nd Sess., Section 306 (emphasis added). This passage shows both that Congress understood the old INA § 106(a) to apply only to orders of removal and that Congress intended to preserve that scope in the new INA § 242.

Defendant argues that the court should weigh the plain meaning of INA § 242(a)(2)(B)(i) over that section's title and find that IIRIRA divested the courts of jurisdiction to any challenge to INS adjustment decisions. This court is aware that, as a general proposition, the heading

of a section cannot limit the plain meaning of the text. *See Brotherhood of R.R. v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947). However, the court is not bound by the general rule, particularly in a case like this one where defendant's interpretation would violate the canon that limitations of jurisdiction are to be narrowly construed. Defendant's reading would broaden the applicability of INA § 242 beyond Congress' intent. The reading would also be Constitutionally problematic because, under defendant's interpretation, an alien not subject to deportation would have no right to judicial review of any INS decision, no matter how arbitrary or unlawful that decision might be.

It is true that Congress may remove jurisdiction of one court by substituting an alternative avenue to review. INA § 242 has this effect on appeals of removal orders. INA § 242(a)(2)(b) divests the district court of jurisdiction over removal orders while, at the same time, INA § 242(b)(2), 8 U.S.C. § 1252(b)(2), provides for review of an order of removal in the Circuit court. However the jurisdiction conferring subsections of INA § 242 expressly limit Circuit court jurisdiction to review of orders of removal. Therefore, if the INS were correct that INA § 242 applied to INS orders not involving removal, then IIRIRA would remove district court jurisdiction without substituting an alternative. It is doubtful that Congress intended to divest *every* court from jurisdiction to review final INS decisions not involving a removal order.

## CONCLUSION

██ After careful consideration of the matter, I find that IIRIRA did not divest

---

**9.** The change in section title, from INA § 106 ("Judicial review of orders of deportation and exclusion,") to new INA § 242 ("Judicial review of orders of removal,") does not imply a change in the new section's scope. IIRIRA consolidated the separate statutory provisions for exclusion and deportation proceedings into a single proceeding called a removal pro-

ceeding. The new heading of INA § 242 reflects that change.

**10.** *See Tang v. Reno,* 77 F.3d 1194, *supra* note 5; *see also* INA § 106(a)(1995)(stating that INA § 106 applied to "all **final orders of deportation**")(emphasis added).

the district court of jurisdiction to review final INS decisions on adjustment of status not·involving a removal order. Accordingly, defendant's Motion [22] to Dismiss Amended Complaint is DENIED.