MATTER OF VILOS

In Deportation Proceedings

A-13461070

*Decided by Board January 24, 1967*

The language of section 205 of the Immigration and Nationality Act, as amended, and of the implementing regulations (8 CFR 205) regarding revocation is sufficiently broad to encompass an alien beneficiary who is already in the United States; hence, where a U.S. citizen's approved visa petition according preference classification to his brother, a section 245 applicant for adjustment of status, was withdrawn by petitioner prior to the allocation of a quota number by the Department of State and approval of the application, a visa was no longer "immediately available" to applicant/beneficiary and he was, therefore, statutorily ineligible for such relief.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmigrant, failed to comply with conditions of status.

ON BEHALF OF RESPONDENT: Andrew Cardaras, Esquire
                Cardaras & Zagone
                11 South La Salle Street
                Chicago, Illinois 60603

This is an appeal from the decision of the special inquiry officer, finding respondent statutorily ineligible for adjustment under section 245, and granting voluntary departure in the exercise of discretion.

Respondent is a 31-year-old married male alien, a native and citizen of Greece, who entered the United States as a nonimmigrant visitor for pleasure at New York City on October 3, 1963. Deportation proceedings were held on November 15, 1963 and respondent was represented by counsel. He admitted the factual allegations in the order to show cause, conceded deportability, and applied for voluntary departure which was granted in a summary decision.

On the same day the hearing was held, respondent's brother, a naturalized citizen of the United States, filed a petition for preference quota status on behalf of respondent. The petition was approved on January 3, 1964, at which time respondent's preference under the

Greek quota was unavailable. On June 30, 1966, respondent submitted a motion to reopen the proceedings to permit him to apply for adjustment since the fifth preference category of the Greek quota was current. The Service did not oppose the motion and the special inquiry officer, by order dated July 15, 1966, reopened the proceedings for the requested purpose.

A hearing was held on August 3, 1966, at which time respondent presented and filed his application. At the end of the hearing, the special inquiry officer advised respondent that his file would be forwarded to the Travel Control Section of the Service for the purpose of processing the adjustment application and that if, after the application was processed, there was no derogatory information, the special inquiry officer would make his decision and the hearing would then be considered closed. He advised respondent that if such information were received, a further hearing would be held to afford respondent an opportunity to refute it.

The next hearing was held on November 15, 1966. At that time, the Government introduced an affidavit by Peter K. Vellos, the brother of respondent, dated September 8, 1966, in which the affiant stated that he had previously withdrawn the petition in May, 1966, had had it revalidated on June 24, 1966, and that he now wished to withdraw the petition again. He gave several reasons for his action in the affidavit. Also introduced in evidence was a letter from the District Director, dated concurrently with the affidavit, addressed to the petitioner and advising him that upon his withdrawal of the petition, the approval thereof was automatically revoked as of the original approval date. The file does not show that a quota number was allocated for respondent's use by the State Department at any time before the revocation (Tr. p. 18).

Counsel argued that the withdrawal of the petition did not work a revocation because it had occurred too late, since it had not been prior to the commencement of respondent's journey to the United States. He contended that it was untimely also because the respondent, when a quota number was available, had applied for adjustment, submitted all of the documentation, paid the fee, had his physical examination, had his case processed and, it is urged, completed except for the mailing out of the I-151 as evidence of the grant of permanent residence, and that the adjustment procedure was therefore a "consummated transaction" (Tr. p. 16) before the revocation. The Government's position was simply that with the revocation, there was no longer an immigrant visa immediately available to respondent and he, therefore, was ineligible for adjustment. The hearing was closed,

without decision, after respondent's eligibility for voluntary departure was explored.

In his decision, the special inquiry officer held that the language in 8 CFR 205.1, specifying that revocation and notice should take place before the alien began his journey to the United States, did not make ineffective the revocation here, since the respondent-beneficiary was already in the United States applying for adjustment under section 245, when the revocation occurred. Since the preference petition had been validly revoked, and the Visa Office bulletin showed that the nonpreference portion of the Greek quota, to which respondent was chargeable, was oversubscribed, the special inquiry officer concluded that respondent had not established that an immigrant visa was immediately available to him, and, therefore, had not met the conditions of statutory eligibility under section 245, and denied adjustment. Voluntary departure was granted with an alternate order of deportation to Greece if respondent should fail to depart when and as required.

On appeal, counsel makes substantially the same contentions he urged at the hearing. He relies heavily upon his claim that the Service requested the alien to file an application for adjustment (a factor not established by the record), stating: "The Government does not call for a 485 petition until a visa number is available. Having done so, we must infer that one was available to this alien. * * *" (Brief on Appeal, p. 1) He also argues that the revocation provisions set forth in 8 CFR 205.1 are totally inapplicable, because they were not intended to cover an alien already in the United States; that if the legislators had intended to permit a visa petition withdrawal where the person was applying for adjustment in the United States, they should have said so, and their failure to mention this specific eventuality compels an inference that they did not intend there could be a revocation in such a situation. He repeats the argument that the adjustment application had advanced to the point where it was "an executed action", and claims it could be stopped at this stage only if statutory ineligibility were shown.

We consider that counsel misreads both the law and the regulations in urging the above interpretations. First, quota availability *is* an element of statutory eligibility, since adjustment is predicated upon a showing that an immigrant visa is immediately available to the applicant (section 245(a)(3)). Second, it is not controlling that such a visa was available when the application was submitted, because the statute specifies that visa availability must exist *at the time the application is approved* (section 245(a)(3)).

While the statute and the regulations pertaining to revocation were drafted with the overseas visa applicant in mind (see section 205, Im-

migration and Nationality Act and 8 CFR section 205), with the purpose of sparing such a person the hardship of a trip to the United States when quota availability no longer existed because of the revocation of a preference petition, it can hardly be contended, in the face of the specific statutory authority to revoke at any time, that there is no power in the Attorney General to revoke a petition, for good and sufficient cause, merely because the beneficiary is in the United States when revocation is sought. If section 205 were to be interpreted as counsel urges, it would make petitions filed on behalf of persons already in the United States virtually irrevocable, even when the relationship or status required for the preference no longer existed. We cannot believed that it was the intention of Congress to create a class of beneficiaries so privileged.

The remaining question is whether the revocation was timely. While a petitioner has the power to withdraw a petition and thereby remove the beneficiary from the applicable preference category, we do not believe this power continues indefinitely. Once the beneficiary has been admitted to the United States with an immigrant visa, or has had an adjustment application approved under section 245, a request to withdraw a petition previously properly approved would in no way affect the alien's newly acquired permanent resident status. However, short of that point, while the beneficiary is still an applicant whether for entry as an immigrant or adjustment to permanent resident status, and before final favorable action has been taken on his application, whether by an immigrant inspector or a district director or special inquiry officer, we believe that any factor which goes to the eligibility of the applicant for the admission or adjustment sought must be considered in making the final determination in his case.

It is counsel's contention that respondent's case had reached the point where it could no longer be affected by a withdrawal and revocation, that it was already a "consummated transaction", an "executed action". This is not supported by the material of record. Section 245.1 (g), 8 CFR provides:

* * * An application for adjustment as a preference or nonpreference alien shall not be approved until an immigrant visa number has been allocated by the Department of State. * * *

According to the special inquiry officer, the record does not show that any such number was ever allocated (Tr. p. 18). Thus, contrary to counsel's contention, the adjustment proceeding was not only not a consummated transaction, but it had not even reached the point where it could have been approved, at the time of the withdrawal and revocation. The withdrawal and revocation, at that point, were effective to nullify the previously granted preference status, and without it the

respondent could not establish immediate availability of an immigrant visa. Thus, it was properly held by the special inquiry officer that respondent was not eligible for the adjustment sought.

The sole relief for which respondent is eligible is the voluntary departure already granted to him by the special inquiry officer. We will, therefore, dismiss the appeal.

**ORDER:** It is ordered that the appeal herein be and the same is hereby dismissed.