**BREM–AIR DISPOSAL, a corporation organized under the laws of the State of Oregon, Plaintiff–Appellant,**

v.

**William S. COHEN, as the Secretary of the Defense; John Dalton, as the Secretary of the Department of the Navy; Dale Baugh, as the Commanding Officer of the Puget Sound Naval Shipyard; and the United States of America, Defendants–Appellees.**

No. 96–35717.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1997.

Decided Sept. 28, 1998.

Susan Caulkins (argued), Shiers, Chrey, Cox & Caulkins, Port Orchard, WA, for plaintiff-appellant.

Christine N. Kohl (argued), United States Department of Justice, Washington, DC, for defendants-appellees.

Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,* District Judge.

O'SCANNLAIN, Circuit Judge:

We must decide whether a garbage contractor seeking to serve a naval base has standing under the Administrative Procedure Act to sue the United States for allegedly disregarding the contractor's exclusive waste-disposal rights granted by the local municipality.

---

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

**I**

The United States Navy operates the Puget Sound Naval Shipyard in the city of Bremerton, Washington. Pursuant to municipal contract and code, Brem–Air Disposal, Inc., claims to be the exclusive contractor for the collection and disposal of all solid waste generated in Bremerton.[1] According to Brem–Air, its garbage-collection rights extend to the shipyard. In 1995, however, when the Navy anticipated a need for waste-disposal services, it did not hire Brem–Air; instead, it initiated a competitive bidding process. Brem–Air did not take part in this process, submitting neither a bid nor a protest. Eventually, the Navy awarded the contract to one of Brem–Air's competitors.

Seeking declaratory, injunctive, and monetary relief, Brem–Air sued the United States and three of its officers (collectively "the Navy"). Brem–Air's theory of recovery was that—although the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551–3556, generally requires competitive bidding for government contracts—CICA yields to the superior mandate of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6991. Under RCRA, the argument went, the Navy was not free to award the contract to anyone besides Brem–Air: RCRA mandates that federal agencies comply with all "local requirements" concerning the collection and disposal of solid waste, including municipal contracts and codes. 42 U.S.C. § 6961(a). The district court, however, did not reach the merits of this dispute; rather, after both parties moved for summary judgment, the court dismissed the case for lack of standing.

Brem–Air timely appealed.

1. Brem–Air's contract with the city provides as follows:

3.1 *Exclusive Right.* The parties agree that the CONTRACTOR shall have the exclusive right to collect, recycle, and otherwise dispose of all solid waste accumulated by the CITY and its residents for collection by the CONTRACTOR, in accordance with the other terms of this agreement. . . .

3.1.1. The CITY agrees to enact and enforce the ordinances necessary to require all residents of the CITY, whether private inhabitants or commercial inhabitants, to subscribe

**II**

In determining that Brem–Air lacked standing, the district court examined only CICA. To have standing under CICA, as the district court noted, a plaintiff must qualify as an "interested party," which is defined as an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2). Once the bid-proposal period expires, a party can no longer qualify as a "prospective" bidder; it can claim standing only if it filed an actual bid or a bid protest. *See Waste Management of N. Am. v. Weinberger,* 862 F.2d 1393, 1398 (9th Cir.1988). Because Brem–Air submitted neither, the district court concluded that the company lacked standing to bring this suit.

We agree with the district court's analysis of CICA. As we held unmistakably in *Waste Management,* Brem–Air's failure to participate in the competitive-bidding process, either by filing a bid or a protest, is dispositive. *See id.* Contrary to Brem–Air's claim, its alleged right to be a sole-source provider of waste disposal services is of no consequence; while it might affect the merits of the underlying dispute, it does not bestow standing under CICA.[2]

**III**

This conclusion, however, does not end our inquiry, for Brem–Air also maintains it has standing under the Administrative Procedure Act ("APA"). Section 10(a) of the APA, codified at 5 U.S.C. § 702, states in relevant part:

for and pay for the CONTRACTOR's services as described by the CONTRACT.
According to Brem–Air, the city has codified this exclusive contractual right in the municipal code. *See* Bremerton, Wash., Municipal Code ch. 6.04 (defining rights and duties of "garbage collector").

2. Our decision in *Parola v. Weinberger,* 848 F.2d 956 (9th Cir.1988), is not to the contrary. In *Parola,* the plaintiff filed both a bid and a bid protest, so it clearly had standing under CICA. *See id.* at 957.

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702.[3] Focusing on the language of § 10(a), Brem–Air asserts that its grievance is justiciable. According to Brem–Air, it suffered a "legal wrong," and was "adversely affected or aggrieved by agency action," when the Navy violated RCRA by disregarding the company's exclusive waste-disposal rights. Brem–Air believes that this interplay between APA § 10(a) and RCRA allows us to review the merits of its dispute with the government.

We disagree. Quite simply, Brem–Air overlooks another subsection of the APA, one which expressly limits the statute's scope. Under APA § 10(c), codified at 5 U.S.C. § 704, federal courts lack jurisdiction over APA challenges whenever Congress has provided another "adequate remedy." The case before us therefore comes down to one simple question: Did Congress preclude APA review by providing such an alternative remedy?

The most likely prospect, we suppose, is the citizen-suit provision of RCRA itself. *See* 42 U.S.C. § 6972(a). This provision states in relevant part:

> *[A]ny person* may commence a civil action on his own behalf —
>
> (1)(A) against *any person (including* (a) the United States, and (b) *any other governmental instrumentality or agency,* to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of *any* permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter....

5 U.S.C. § 6972(a) (emphasis added). The text could not be more clear as to the stat-

ute's scope: "any person," including Brem–Air, can sue "any person," including the United States and its officers, for any violation of "any [of RCRA's] ... requirement[s]." *Id.* In light of the extraordinary breadth of this statutory language, Brem–Air most certainly *could have* filed a citizen-suit.[4]

A recent Supreme Court case makes this very point. As the Court explained in *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), with regard to the citizen-suit provision of the Endangered Species Act, a conferral of standing upon "any person" is "an authorization of remarkable breadth." *Id.* at 1162. It applies to "*all* the causes of action" created by the statute, and "there is no textual basis for saying that its expansion of standing requirements applies to environmentalists alone." *Id.* at 1163 (emphasis added). Put simply, the Court recognized something quite basic: "any" means "any." A statute that allows *any* person to sue *any* other person for *any* violation of *any* of the statute's requirements means precisely what it says. Our decision in *Parola* is not to the contrary. Parola, asserting rights under an exclusive garbage-collection franchise similar to Brem–Air's, had (unlike Brem–Air) filed a bid and initiated bid-protest procedures under CICA. As a result, it was an interested party under CICA, giving it standing. *See* 31 U.S.C. §§ 3551(2), 3556; *Waste Management,* 862 F.2d at 1396. We therefore rejected defendants' argument that failure to comply with the sixty-day notice requirement in RCRA's citizen-suit provision precluded Parola from having standing. *See Parola,* 848 F.2d at 959 ("Thus, the RCRA citizen suit provision does not displace Parola's independent basis for suit and is irrelevant to the jurisdictional issue."). The observations regarding the scope of that provision and judicial review under the APA were not necessary to the decision.

3. As we have noted, § 10 waives "sovereign immunity in suits seeking judicial review of agency actions where judicial review has not been expressly authorized by statute." *Parola,* 848 F.2d at 958. Although § 10 is not itself a grant of subject matter jurisdiction, a district court can obtain jurisdiction over an APA challenge so long as the plaintiff asserts a substantive claim "aris-

ing under" federal law, such as RCRA. *See id.* at 958–59.

4. The company needed only to clear RCRA's procedural hurdle of providing sixty-days notice, *see* 42 U.S.C. § 6972(b)(1)(A), something it failed to do.

Thus, the question becomes whether RCRA's expansive citizen-suit remedy is "adequate" within the meaning of § 10(c) of the APA. One factor perhaps counseling against answering this question in the affirmative is the sixty-days-notice procedural hurdle which Congress imposed on litigants who wish to file a RCRA citizen-suit. *See* 42 U.S.C. § 6972(b)(1)(A). One might argue that this requirement renders the remedy inadequate; after all, it was Brem–Air's failure to provide such notice that precludes us from reviewing the company's claim as a RCRA citizen-suit.

However, we are not writing on a clean slate when it comes to the notice requirement. In *Oregon Natural Resources Council v. United States Forest Service*, 834 F.2d 842 (9th Cir.1987), a Clean Water Act case, we concluded, in no uncertain terms, that plaintiffs may not "circumvent the notice requirement of the citizen suit provision by resorting to the APA. Where plaintiffs may otherwise proceed under the citizen suit provision, they should not be allowed to bypass the explicit requirements of the Act established by Congress through resort to ... the APA." [5] *Id.* at 851 (citations omitted).

Unsurprisingly, one of our sister circuits has reached the same conclusion. In *Allegheny County Sanitary Authority v. United States Environmental Protection Agency*, 732 F.2d 1167 (3d Cir.1984), the Third Circuit held that, because of the Water Pollution Control Act's citizen-suit provision, the APA had no application. *See id.* at 1177. As the court explained:

> [The citizen-suit provision] sets out a requirement of notice to the Administrator and prohibits the filing of a suit until sixty days after notice is given. The notice requirement reflects the intent of Congress to allow the EPA to react to citizen complaints before suit is filed and prevent unnecessary litigation. That aim is frustrated if a citizen complainant may bypass the notice requirement by resorting to the APA remedy for conduct already reviewable by the citizen-suit provision.

*Id.* at 1177 (citations omitted). Indeed, as far as we can tell, every court that has addressed the question has agreed: "[I]f a plaintiff can bring suit against the responsible federal agencies under [a citizen-suit provision], this action precludes an additional suit under the APA." *Environmental Defense Fund v. Tidwell*, 837 F.Supp. 1344, 1356 (E.D.N.C.1992).

We will not swim against such a cohesive tide of authority. Because the RCRA citizen-suit provision constitutes an "adequate remedy," we lack jurisdiction to review Brem–Air's claim under the APA.[6]

**AFFIRMED.**

---

**5.** Brem–Air cannot claim the assistance of RCRA's "savings clause," 42 U.S.C. § 6972(f), which provides: "Nothing in this section shall restrict any right which any person may have under any statute ... to seek enforcement of any requirement relating to the management of [waste]." If we were to read this provision as opening the door to a parallel track for enforcing RCRA under the APA, we would wholly nullify the sixty-day notice requirement, in conflict with our holding in *Oregon Natural Resources Council*. Effectively, plaintiffs would "be allowed to bypass the explicit requirements of the Act." *Oregon Natural Resources Council*, 834 F.2d at 851.

**6.** Because one adequate remedy is enough, we need not decide whether CICA is also an adequate remedy.