**ANA INTERNATIONAL, INC., and Honggang Yu, Plaintiffs,**

v.

**Terry E. WAY, James Ziglar, and John Ashcroft, Defendants.**

**No. CUV,02–479–BR.**

United States District Court,
D. Oregon.

Dec. 6, 2002.

Timothy R. Volpert, James M. Mei, Eric L. Dahlin, Davis Wright Tremaine LLP, Portland, OR, for Plaintiffs.

Michael W. Mosman, United States Attorney, Craig J. Casey, Assistant United States Attorney, Portland, OR, for Defendants.

## OPINION AND ORDER

BROWN, District Judge.

Plaintiffs petition the Court to review the decision of the Immigration and Naturalization Service (INS) to revoke its prior approval of Plaintiff ANA International, Inc.'s immigrant visa petition on behalf of Plaintiff Honggang Yu. This matter comes before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (# 11), and Plaintiffs' Motion for Summary Judgment (# 18).

For the reasons that follow, the Court concludes it lacks subject matter jurisdiction. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss, **DENIES as moot** the portion of Defendants' Motion regarding summary judgment, **DENIES as moot** Plaintiffs' Motion for Summary Judgment, and **DISMISSES** this action **without prejudice.**

### *IMMIGRATION AND NATIONALITY ACT*

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101, *et seq.,* provides a comprehensive statutory scheme regarding the visitation and immigration of aliens to the United States. Pursuant to the INA, an alien who has a residence in a foreign country that he has no intention of abandoning and who is visiting the United States temporarily for business or pleasure is classified as a nonimmigrant. 8 U.S.C. § 1101(a)(15)(B). Certain nonimmigrants may be permitted to reside and to work in the United States for an extended period, including certain intracompany managerial or executive transferees. 8 U.S.C. § 1101(a)(15)(L). A nonimmigrant intracompany managerial or executive transferee is an alien

> who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal identity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge.

8 U.S.C. § 1101(a)(15)(L).

Multinational executives and managers who wish to immigrate to the United States on a permanent basis may qualify as priority workers who are entitled to a preference allocation of immigrant visas pursuant to 8 U.S.C. § 1153(b)(1). An alien qualifies as a multinational executive or manager for purposes of an immigrant visa if

> the alien, in the 3 years preceding the time of the alien's application for classification and admission into the United States under this subparagraph, has been employed for at least 1 year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and the alien seeks to enter the United States in order to continue to render services to the same employer or to a

subsidiary or affiliate therof in a capacity that is managerial or executive.

8 U.S.C. § 1153(b)(1)(C). The INA defines managerial and executive capacities as follows:

(A) The term "managerial capacity" means an assignment within an organization in which the employee primarily-

(i) manages the organization, or a department, subdivision, function, or component of the organization;

(ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;·

(iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if not other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

(iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

(B) The term "executive capacity" means an assignment within an organization in which the employee primarily—

(i) directs the manager of the organization or a major component or function of the organization;

(ii) establishes the goals and policies of the organization, component, or function;

(iii) exercises wide latitude in discretionary decision-making; and

(iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

(C) If staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, the Attorney General shall take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function. An individual shall not be considered to be acting in a managerial or executive capacity (as previously defined) merely on the basis of the number of employees that the individual supervises or has supervised or directs or has directed.

8 U.S.C. § 1101(a)(44).

8 U.S.C. § 1154 describes the procedure for granting immigrant status to aliens, including the procedure to be followed by an employer that desires and intends to employ within the United States an alien entitled to preferential status as a multinational executive or manager under 8 U.S.C. § 1153(b)(1)(C). According to these statutory provisions, an employer that wishes to employ an alien as a multinational executive or manager may file a petition with the Attorney General. 8 U.S.C. § 1154(a)(1)(D). If the Attorney General determines after investigation that the facts stated in the petition are true and the alien is eligible as a multinational executive or manager, the Attorney General approves the visa petition and forwards it to the Department of State. 8 U.S.C. § 1154(b). The Secretary of State must then authorize "the consular office concerned" to grant the alien immigrant status. 8 U.S.C. § 1154(b). The consular office may not grant immigrant status un-

til specifically authorized by the Attorney General. 8 U.S.C. § 1153(f). As immigrant visas become available, they are issued to eligible immigrants in the order in which their petitions under § 1154 were filed. 8 U.S.C. § 1153(e). An alien who holds an approved petition, however, is not entitled to be admitted to the United States as an immigrant on the basis of the approved petition alone. If the alien on arrival at a port of entry is found not to be entitled to a preferential classification pursuant to 8 U.S.C. § 1153, he is inadmissible even if he holds an approved visa petition. 8 U.S.C. § 1154(e).

In the alternative, the Attorney General may adjust the status of a nonimmigrant alien already lawfully in the United States to immigrant status if certain circumstances are present: (1) the alien applies for adjustment, (2) the alien is eligible to receive an immigrant visa, (3) the alien is admissible to the United States, and (4) an immigrant visa is immediately available to him. 8 U.S.C. § 1255.

The INA, however, authorizes the Attorney General to revoke his prior approval of a visa petition in certain circumstances. 8 U.S.C. § 1155 provides:

> The Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition. In no case, however, shall such revocation have effect unless there is mailed to the petitioner's last known address a notice of the revocation and unless notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary commences his journey to the United States. If notice of revocation is not so given, and the beneficiary applies for admission to the United States, his admissibility shall be

determined in the manner provided for by sections 1225 and 1229a of this title.

The Attorney General delegated his authority to enforce the INA and to direct the INS to the Commissioner of Immigration and Naturalization. 8 C.F.R. § 2.1(a). The Attorney General also granted the Commissioner the power to issue regulations as deemed necessary or appropriate to exercise this delegated authority and the power to redelegate such authority to any officer or employee of the INS. *Id.* The Commissioner redelegated the power to revoke visa petitions pursuant to 8 U.S.C. § 1155 to the INS. 8 C.F.R. § 3.1.

### BACKGROUND

Yu is a Chinese citizen who currently is residing in the United States. In 1994, Yu was employed as the Manager of the Import and Export Division of the Chinese company, Anshan AEC. Yu entered the United States in June 1994 after he obtained a B–1 nonimmigrant or temporary visa for a business visitor from the American Consul at Shenyang, China. On April 10, 1995, Yu filed Articles of Incorporation for ANA with the Secretary of State for the State of Oregon. The following month, ANA filed with the INS an L1–A visa petition to classify Yu as a nonimmigrant "new office intracompany multinational executive or manager transferee." On June 10, 1995, the INS approved ANA's L–1A petition on behalf of Yu. On May 28, 1996, ANA applied to extend Yu's L–1A visa. In November 1996, the INS approved ANA's petition and extended Yu's L–1A visa.

On March 27, 1997, ANA filed with the INS an immigrant or permanent green card visa petition, also known as an I–140 petition, in which ANA requested the INS to classify Yu as a multinational executive or manager as described in 8 U.S.C. §§ 1101(a)(44) and 1153(b)(1)(C). The

INS launched an investigation and subsequently approved ANA's I–140 petition in July 1997.

On January 2, 1998, Yu filed with the INS an application to adjust his status to that of a lawful permanent resident, also known as an I–485 petition, based on the INS's previous approval of ANA's I–140 petition and its classification of Yu as a multinational executive or manager.

In April 1999, the adjudications officer at the INS's Nebraska Service Center exercised his discretion to require a field interview of Yu before making a final determination on Yu's I–485 petition for adjustment of status. On June 13, 2000, a District Adjudications Officer at the INS's Branch Office in Portland, Oregon, interviewed Yu. On November 9, 2000, Yu's I–485 application packet was returned to the Nebraska Service Center for processing.

As a result of its investigation regarding Yu's I–485 petition, the INS mailed to ANA on March 13, 2001, a notice of its intent to revoke its previous approval of ANA's I–140 visa petition on behalf of Yu pursuant to 8 U.S.C. § 1155. According to the notice, the INS concluded the record did not support a finding that Yu's duties at ANA were "primarily" executive or managerial as required by 8 U.S.C. § 1101(a)(44). In particular, the INS stated in its notice that

> [t]he record contains insufficient evidence to demonstrate that the beneficiary will be employed in a primarily managerial capacity. The description of the duties to be performed by the beneficiary in the proposed position does not persuasively demonstrate that the beneficiary will have managerial control and authority over a function, department, subdivision or component of the company. Further, the record does not sufficiently demonstrate that the beneficiary will manage a subordinate staff or professional, managerial, or supervisory

personnel who will relieve him from performing nonqualifying duties. The Service in [sic] not compelled to deem the beneficiary to be a manager or executive simply because the beneficiary possess a managerial or executive title. The petitioner has not established that the beneficiary will be employed in a primarily managerial or executive capacity.

The INS informed ANA of its right to respond to the notice, and ANA filed rebuttal documents. Nonetheless, on April 26, 2001, the INS revoked its prior approval of ANA's I–140 petition on behalf of Yu. In the revocation letter, the INS stated:

> After an overall review of the record, it appears that the beneficiary will be involved in the performance of routine operational activities of the company rather than in the management of a function of the business. Based on the evidence submitted, it cannot be concluded that the beneficiary will be primarily employed in a qualifying managerial or executive capacity. In addition, it cannot be established that the petitioning entity is engaged in the regular, systematic and continuous provision of goods and/or services.

ANA timely appealed this decision to the Administrative Appeals Unit (AAU) of the INS. See 8 C.F.R. § 103.1(f)(3)(iii). Before the AAU ruled on the appeal, Plaintiffs filed an action in this Court, CV–01–818–BR, in which they sought declaratory and injunctive relief from the INS's decision to revoke the I–140 petition. Plaintiffs further sought a court order to require Defendants to adjust Yu's status to that of a lawful permanent resident.

After Plaintiffs filed their Motion for Summary Judgment in the original action, the AAU dismissed ANA's appeal. In its decision issued October 30, 2001, the AAU modified the INS's bases for revoking its approval of the I–140 visa petition. In

particular, the AAU reversed the Adjudications Officer's determination that ANA failed to show it had been doing business in a regular, systematic, and continuous manner. The AAU also held the INS failed to give notice of this ground for revocation in its notice of intent to revoke. The AAU, however, sustained the Adjudication Officer's determination that ANA failed to establish that Yu was to be employed in the United States in a primarily managerial or executive capacity. The AAU also noted ANA did not submit evidence to establish that Yu had been employed abroad by its purported parent company in a managerial or executive capacity for at least one year in the three years preceding his entry to the United States as a nonimmigrant as required by 8 C.F.R. § 204.5(j)(3)(i)(B). Finally, the AAU concluded ANA failed to meet its burden to establish the requisite relationship between ANA and Anshan AEC, ANA's alleged Chinese parent company that previously employed Yu in China. *See* 8 C.F.R. § 204.5(j)(3)(i)(C).

On March 13, 2002, this Court heard oral argument on the issue whether the Court should dismiss the original action for lack of subject matter jurisdiction because the INS's initial revocation determination was not a final decision ripe for judicial review in light of ANA's subsequent appeal to the AAU and the AAU's dismissal of that appeal. The Court took the matter under advisement, and the parties subsequently reached an agreement in which the INS agreed to permit Yu to remain in the United States as a parolee during the pendency of these proceedings. On April 10, 2002, Plaintiffs filed the present action. Plaintiffs directly challenge the AAU's decision as arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence in the record and seek a permanent injunction that orders the INS to approve ANA's I–140 petition on behalf of Yu and to change Yu's status to that of a lawful permanent resident. In light of Plaintiffs' subsequent action, the Court dismissed the original action as moot.

## DEFENDANTS' MOTION TO DISMISS

Plaintiffs contend the Court has jurisdiction over this matter pursuant to the general grant of federal question jurisdiction under 28 U.S.C. § 1331; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et seq.;* and the INA. Defendants, on the other hand, argue the Court lacks subject matter jurisdiction over this action under the APA because the INA expressly precludes judicial review of this agency decision. In addition, Defendants contend the APA precludes judicial review because the INA commits the revocation decision to agency discretion.

### Standard

A plaintiff who seeks to invoke the district court's jurisdiction bears the burden to establish the court possesses subject matter jurisdiction over an action. *Ass'n of Am. Med. Coll. v. United States,* 217 F.3d 770, 778–79 (9th Cir.2000). When a defendant moves to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) based on a facial challenge to the sufficiency of the allegations of the complaint, however, the court must accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. *Id.*

### Discussion

The district courts have federal question subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs' claims allegedly arise under a federal statute; namely, the INA. Before 1996, the INA contained a

general grant of subject matter jurisdiction to the district courts. 8 U.S.C. § 1329 (1995) ("The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter."). In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which repealed the INA's judicial review scheme and replaced it with a new "and significantly more restrictive" scheme. *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 475, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). In particular, IIRIRA amended the general jurisdictional statute to clarify that it applies only to actions brought by the United States and not to actions brought by aliens against the government. 8 U.S.C. § 1329 ("The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter."). *See also American–Arab*, 525 U.S. at 477 n. 4, 119 S.Ct. 936. The INA, therefore, no longer provides an independent basis for an exercise of subject matter jurisdiction by the district courts over aliens' claims arising under the INA.

■ The Declaratory Judgment Act does not extend or expand the subject matter jurisdiction of the federal courts. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1089 (9th Cir.2002). 28 U.S.C. § 2201 merely enlarges the range of remedies available in a matter properly before a federal court. *Id.*

■ The APA provides the federal courts shall have jurisdiction to review agency action "made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA, however, does not apply to agency decisions that are (1) made pursuant to a statute that expressly precludes judicial review or (2) committed

to agency discretion by law. 5 U.S.C. § 701(a)(1). The APA provisions do not create substantive rights, and there is no right to sue for an alleged violation of the APA in the absence of an underlying federal statute that forms a basis for such an action. *Brem–Air Disposal v. Cohen*, 156 F.3d 1002, 1004 n. 3 (9th Cir.1998). A federal court, however, has subject matter jurisdiction over an APA challenge if the plaintiff asserts a substantive claim arising under federal law even if the underlying federal statute does not authorize explicitly judicial review of a given agency action. *Id.* In addition, the APA expressly waives federal sovereign immunity for such claims to the extent the claimant seeks declaratory and injunctive relief against federal agencies and their employees and officers. 5 U.S.C. § 702. *See also Brem–Air*, 156 F.3d at 1004 n. 3.

As noted, the INA no longer provides a general grant of authority to the district courts to review agency actions. Nonetheless, the parties agree, and the Court expressly finds, the AAU's decision is a final agency action for which there is no other adequate remedy at law. Accordingly, the Court has subject matter jurisdiction over this action as long as the Plaintiffs can show: (1) the INA does not expressly preclude judicial review of the INS's decision to revoke its previous approval of Plaintiff ANA's I–140 petition, and (2) the INA does not commit that decision to agency discretion by law.

## I. Express Preclusion of Judicial Review

Defendants argue Congress stripped the federal district courts of jurisdiction to review the INS's decision to revoke its prior approval of an I–140 petition when it enacted 8 U.S.C. § 1252(a)(2)(B)(ii) as part of IIRIRA in 1996. Section 1252 provides in part:

**Judicial review of orders of removal**

**(a) Applicable provisions**

**(1) General orders of removal**

Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of Title 28, except as provided in subjection (b) of this section and except that the court may not order the taking of additional evidence under section 2347(c) of Title 28.

**(2) Matters not subject to judicial review**

\* \* \* \* \* \*

**(B) Denials of discretionary relief**

Notwithstanding any other provision of law, no court shall have jurisdiction to review -

(i)· any judgment regarding the granting of relief under section 1182(h), 1182(j), 1229(b), 1229(c), or 1255 of this title, or

(ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

As noted, § 1155 provides the INS "may, at any time, for what ... [it] deems to be good and sufficient cause, revoke the approval of any petition approved by ... [it] under section 1154." Section 1155 also states "[i]n no case, however, shall such revocation have effect unless there is mailed to the petitioner's last known address a notice of the revocation and unless notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary commences his journey to the United States."

Defendants assert the INS had the discretionary authority to revoke Plaintiff ANA's I–140 visa petition under 8 U.S.C. § 1155, and, therefore, the Court is precluded under 8 U.S.C. § 1252(a)(2)(B)(ii) from reviewing that discretionary agency action. Plaintiffs, on the other hand, argue the INS's revocation of its approval of Plaintiff ANA's petition is not a decision specified to be in the INS's discretion under the INA because § 1155 does not give the INS discretion to revoke a visa petition after the beneficiary of the petition has commenced his journey to the United States. In the alternative, Plaintiffs argue § 1252(a)(2)(B)(ii) does not apply to discretionary decisions other than in removal proceedings and, therefore, does not preclude judicial review here because the INS has not instituted removal proceedings against Yu.

**A. Statutory Construction Standards**

When a district court interprets a federal statute, it must apply a two-part analysis. "The first and most important step in construing a statute is the statutory language itself." *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir.2001) (citing *Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The court must look to the text of the statute to " 'determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). "The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Accordingly, it is a " 'fundamental canon of statutory construction that the words of a statute must

be read in their context and with a view to their place in the overall statutory scheme.'" *Id.* (quoting *Davis v. Michigan Dept. of Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)). A court, therefore, must "interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Id.* (internal quotations and citations omitted).

If congressional intent is clear from the plain meaning of the statute, the court need not look further for guidance. *Id.* If the statute is ambiguous as to the question at issue, however, the court must proceed to the second step and determine the meaning of the statute's language by giving deference to the governing agency's interpretation as long as that interpretation is permissible. *Brown & Williamson,* 529 U.S. at 132, 120 S.Ct. 1291.

**B. Scope of § 1155**

**1. Plain Meaning**

■ Both parties contend the plain meaning of § 1155 is unambiguous and supports their positions. Plaintiffs argue the INS cannot rely on § 1155 as justification for its decision to revoke Plaintiff ANA's I–140 petition because the plain meaning of § 1155 clearly evinces Congress's intent to authorize the INS to exercise its discretion to revoke a visa petition only if the INS provides the beneficiary with notice before the beneficiary commences his journey to the United States.

Although Plaintiffs concede the first sentence of § 1155 "seems" to authorize the INS to revoke "any" visa petition "at any time," Plaintiffs argue the third sentence of § 1155 limits that authority. Plaintiffs contend the plain meaning of the words, "In no case, however, shall such revocation have effect unless ... notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary com-

mences his journey to the United States" establishes Congress's intent that the INS may revoke a visa petition only before a beneficiary commences his travels to the United States.

Defendants, on the other hand, contend Plaintiffs' construction of the statute is unreasonable because it fails to give effect to the broad scope of the first sentence of the statute, which authorizes the INS to revoke approval of any petition at any time for good and sufficient cause. Defendants argue the "limitation" suggested by Plaintiffs' interpretation of the third sentence, in effect, would abrogate the INS's authority to revoke any visa petition that was obtained while the beneficiary was present in the United States. Although Defendants acknowledge the third sentence of the statute "seems" to limit the INS's authority with respect to all immigrant visa petitions regardless of where or how they were obtained, Defendants contend the statute as a whole shows congressional intent to provide a narrow procedural limitation on the INS's ability to revoke previously-approved immigrant visa petitions of beneficiaries who apply for an immigrant visa with the American Consulate abroad, travel to the United States, and then apply at a port of entry for admission to the United States as immigrants.

To construe the meaning of § 1155, the Court must examine the statutory provision in the context of the INA as a whole. Section 1155, by its own terms, authorizes the INS to revoke prior approval of visa petitions issued pursuant to 8 U.S.C. § 1154. Section 1154 describes the procedure for granting immigrant status to aliens, including aliens seeking preferential status as multinational executives and managers pursuant to 8 U.S.C. § 1153(b)(1)(C).

On their face, §§ 1153 and 1154 appear to apply only to a person who files an

immigrant visa petition while still abroad and has not obtained a nonimmigrant visa. Congress, however, also authorized the INS to adjust the status of a nonimmigrant alien already lawfully present in the United States if the alien applies for adjustment and is "eligible" to receive an immigrant visa. 8 U.S.C. § 1255. Section 1154 specifically provides an alien must obtain the INS's approval of an immigrant visa petition before the alien may obtain an immigrant visa or green card. Thus, the INA, taken as a whole, anticipates a nonimmigrant alien lawfully present in the United States or someone on behalf of the alien may file a § 1154 petition.

Defendants emphasize the broad language of the first sentence of § 1155, which provides the INS may revoke a § 1154 petition at any time for good and sufficient case. Defendants argue the scope of this language would be significantly and inappropriately reduced if the Court were to limit the INS's revocation power to aliens who apply for visa petitions while still abroad. Defendants argue the Court should read the third sentence of the statute as implicitly limiting the INS's power to revoke and requiring the INS to give prior notice to only to those beneficiaries of visa petitions who obtain approval of their visa petitions while still abroad. In other words, Defendants contend the third sentence of the statute does not require the INS to give prior notice to persons who apply for an adjustment of status.

Plaintiffs' interpretation of the statute, on the other hand, emphasizes the importance of the third sentence of § 1155. Plaintiffs argue the only reasonable interpretation of § 1155 is that the INS may not revoke its approval of a visa petition of a person after the alien has commenced his journey. Such an interpretation of the statute, however, would limit severely the broad authority granted to the INS by the first sentence of § 1155 and would prohibit the INS from revoking its prior approval of any petitions filed by an alien already present in the United States on any grounds even though the INS has broad discretion to revoke its approval of petitions filed by aliens still abroad.

The Court notes § 1155 does not expressly distinguish between aliens abroad and aliens present in the United States in either the first or the third sentences. The first sentence does not specifically limit the INS's authority to revoke an immigrant visa petition to those petitions filed by aliens abroad, and the third sentence does not specifically limit the notice requirement to aliens living abroad. Although the statutory scheme clearly provides for two different paths to obtain an approved visa petition, the revocation provision does not distinguish expressly between them.

In light of the statutory scheme as a whole, the Court finds both parties have presented a reasonable interpretation of the plain meaning of § 1155. Neither interpretation, however, is clearly the correct one. As a result, the Court concludes the text of § 1155 is capable of more than one reasonable interpretation in light of the text in the provision and the general statutory context of which it is a part and, therefore, is ambiguous on its face. The Court cannot discern Congress's intent based on the text and the context of the statute without additional guidance. The Court, therefore, must turn to the second step in the analysis.

### 2. Agency Interpretation

■■■ As noted, the Court must defer to a reasonable official agency interpretation of a statute that the agency has authority to enforce as long as the interpretation is permissible and is not clearly contrary to Congressional intent. Official

agency interpretations are those that have the "force of law," such as regulations, rulings, and orders. *Moore v. Apfel*, 216 F.3d 864, 869 n. 2 (9th Cir.2000). *See also Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1146 n. 11 (9th Cir.2001). Defendants have pointed to several sources that allegedly provide the INS's official interpretation of § 1155. In their most recent brief, Defendants direct the Court to the Board of Immigration Appeals (BIA) decision in *Matter of Vilos*, 1967 WL 13960, 12 I & N Dec. 61 (BIA 1967). Reasonable BIA interpretations of ambiguous INA statutory provisions are entitled to deference. *Dillingham v. Immigration and Naturalization Serv.*, 267 F.3d 996, 1004 (9th Cir.2001).

In *Vilos*, a citizen of Greece entered the United States as a nonimmigrant visitor for pleasure. *Id.* at 61. Vilos's brother, a United States citizen, filed a visa petition for preference status on behalf of Vilos pursuant to 8 U.S.C. § 1154, and the INS subsequently approved the petition. *Id.* at 61. Vilos then applied for an adjustment of his status from a nonimmigrant to an immigrant. *Id.* Vilos's brother, however, decided to withdraw the petition. *Id.* The INS then automatically revoked its approval of the petition effective as of the original approval date. *Id.*

Vilos argued Congress did not intend to permit the INS to revoke a visa petition of an alien already present in the United States. *Id.* Vilos contended the legislators' failure to specifically mention in the statutes that a petition may be withdrawn and the approval of that petition revoked after an alien is present in the United States "compels an inference that they did not intend there could be a revocation in such a situation." *Id.* at 63. The BIA rejected Vilos's reading of the law. The BIA stated both § 1155 and the INS regulations thereunder clearly "were drafted with the overseas visa applicant in mind." *Id.* The

BIA further explained the purpose of the notification requirement in the third sentence of § 1155 is to spare an overseas applicant the hardship of a trip to the United States in the event the INS revokes the visa petition before the applicant has left his homeland. *Id.* at 64. The BIA held this purpose, however, does not limit the INS's ability to revoke petitions of persons already present in the United States. *Id.* The BIA explained:

> it can hardly be contended, in the face of the specific statutory authority to revoke at any time, that there is no power in the Attorney General to revoke a petition, for good and sufficient cause, merely because the beneficiary is in the United States when revocation is sought. If ... [8 U.S.C. § 1155] were to be interpreted as counsel urges, it would make petitions filed on behalf of persons already in the Untied States virtually irrevocable, even when the relationship or status required for the preference no longer existed. We cannot believed [*sic*] that it was the intention of Congress to create a class of beneficiaries so privileged.

*Id.* Accordingly, the BIA determined the language of § 1155 is sufficiently broad to authorize the Attorney General to revoke the visa petition of an alien beneficiary who is already in the United States and awaiting an adjustment of status. *Id.*

Although the Court finds the BIA's interpretation of the statute is not the only reasonable construction of § 1155, the Court also concludes the BIA's interpretation is a reasonable and permissible one in light of the broad language in the first sentence and the overall statutory scheme regarding the availability of an adjustment of status. The Court, therefore, must give deference to the agency's interpretation of the statute and construe the statute in accordance with that interpretation. Ac-

cordingly, the Court concludes § 1155 authorizes the INS to revoke its approval of a § 1154 visa petition filed by or on behalf of an alien already in the United States "at any time, for what ... [it] deems to be good and sufficient cause."

## C. Scope of § 1252(a)(2)(B)(ii)

■ Defendants contend Congress divested the district courts of jurisdiction to review purely discretionary decisions, including decisions to revoke visa petitions pursuant to § 1155, when it enacted § 1252(a)(2)(B)(ii) in 1996 as part of IIRIRA. Assuming the INS has discretion to revoke visa petitions of aliens already in the United States, Plaintiffs concede the decision to revoke a visa petition for good and sufficient cause is a decision that is specified to be within the discretion of the INS pursuant to the INA. Plaintiffs, however, argue § 1252(a)(2)(B)(ii) does not apply except in the context of removal proceedings. Plaintiffs, therefore, argue the Court may not review the INS decision at issue in this matter because the INS did not institute removal proceedings against Yu.

Although the Ninth Circuit has applied § 1252's limitations on judicial review in cases that involve final orders of deportation, it has not decided whether those limitations apply other than in the removal context. *See, e.g., Matsuk v. Immigration and Naturalization Serv.,* 247 F.3d 999 (9th Cir.2001) (pursuant to § 1252(a)(2)(B)(ii), court may review the factual bases of a decision not to suspend an order of deportation, but the court lacks jurisdiction to review the purely discretionary aspects of that decision); *Kalaw v. Immigration and Naturalization Serv.,* 133 F.3d 1147 (9th Cir.1997) (pursuant to transitional rules, court does not have jurisdiction to review the discretionary aspects of a decision not to suspend an order of deportation but the court may review the factual bases of such a discretionary decision). There is a split of authority among the courts that have addressed this issue.

Plaintiffs rely primarily on *Mart v. Beebe,* 94 F.Supp.2d 1120 (D.Or.2000). In *Mart,* the INS denied the plaintiff's application for an adjustment of status pursuant to its discretionary authority under 8 U.S.C. § 1255(a). *Id.* at 1121. The INS argued this decision was a "matter not subject to review" pursuant to the new judicial review provision of § 1252(a)(2)(B)(i).[1] *Id.* at 1123. The court disagreed. The court first noted the district courts had jurisdiction to review the INS's denial of an adjustment of status that did not involve deportation before IIRIRA was enacted. *Id.* at 1122 (citing *Tang v. Reno,* 77 F.3d 1194, 1196 (9th Cir.1996)). The Ninth Circuit reiterated this holding in at least one post-IIRIRA decision. *Id.* (citing *Abboud v. Immigration and Naturalization Serv.,* 140 F.3d 843, 846 (9th Cir.1998)). In *Abboud,* however, the court interpreted and applied the transitional provisions of IIRIRA rather than the current, final standards. *Id.* The transitional rules provided, "there shall be no appeal of any discretionary decision" of the Attorney General made pursuant to authority in the INA. *Id.* at 1122 n. 6. The *Mart* court, however, acknowledged the language of the permanent IIRIRA amendments is more forceful than the transitional rules regarding jurisdiction.

The *Mart* court also noted the majority of jurisdictions that have decided the issue

---

1. 8 U.S.C. § 1252(a)(2)(B)(i) provides no court shall have jurisdiction to review "any judgment regarding the granting of relief under" § 1255, which is the statutory provision that authorizes the Attorney General to adjust the status of nonimmigrant aliens already in the United States.

have concluded § 1252(a) precludes judicial review of decisions except in the removal context. *Id.* at 1123 n. 7. The court, however, concluded Congress intended the restrictions on judicial review in § 1252 to apply only in the context of removal proceedings. *Id.* at 1123–24. The court reasoned the title of § 1252, "Judicial review of orders of removal," evinces Congress's intent that the section apply only in such proceedings. *Id.* at 1124. Although the court acknowledged its decision was contrary to the general rule that the heading of a section cannot limit the plain meaning of the text, the court, nonetheless, concluded it was not bound by that general rule because such an interpretation would violate the equally important canons that dictate limitations of jurisdiction are to be narrowly construed and that ambiguities in the law are to be construed in favor of the alien. *Id.* at 1123–24.

In addition, the court examined the legislative history of IIRIRA and concluded nothing in that history indicates Congress intended to enlarge the restrictions on judicial review when it replaced former § 1105a, which pertained solely to final orders of deportation, with § 1252. *Id.* at 1124. The court noted the House Conference Report specifically provided the scope of the new provision in § 1252(a) is "consistent" with the scope of former § 1105a(a). *Id.* (citing H.R. Conf. Rep. No. 104–828, 104th Cong., 2nd Sess., § 306 (1995)). The court concluded this statement "shows both that Congress understood the old ... [§ 1105a] to apply only to orders of removal and that Congress intended to preserve that scope in the new ... [§ 1252(a) ]." *Id.*

Finally, the court noted the INS's interpretation of § 1252 would remove district court jurisdiction to review final orders that did not involve removal without substituting an alternative forum because the statute clearly limits circuit court jurisdiction to final orders of removal. *Id.* The court found such a result might be "Constitutionally problematic" and reasoned it was "doubtful Congress intended to divest every court from jurisdiction to review final INS decisions not involving a removal order." *Id.*

A few other district courts have similarly held the restrictions on judicial review in § 1252(a)(2)(B) do not divest the district courts of jurisdiction to review INS discretionary decisions other than in the removal context. *See, e.g., Talwar v. Immigration and Naturalization Serv.,* No. 00 CIV. 1166 JSM, 2001 WL 767018 (S.D.N.Y. July 9, 2001) (§ 1252 does not strip a court's subject matter jurisdiction to review the Attorney General's decision to deny a national interest waiver for an employment-based visa); *Shanti v. Reno,* 36 F.Supp.2d 1151 (1999) (court has subject matter jurisdiction to review INS's denial of the plaintiff's petition to classify its employee as a worker in a specialized field pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(b)). As the court noted, however, the majority of courts that have addressed this issue have concluded § 1252 limits the jurisdiction of the federal courts to review decisions of the INS other than those made in the removal context.

In particular, Defendants rely on *CDI Information Servs., Inc. v. Reno,* 278 F.3d 616 (6th Cir.2002). In *CDI,* an alien was admitted to the United States as a nonimmigrant temporary employee of an American employer. *Id.* at 617. CDI subsequently filed a petition to extend the alien's nonimmigrant work visa and declared its desire to employ the alien in the future. *Id.* at 618. The INS denied the request for an extension of the nonimmigrant visa. *Id.* CDI and the alien petitioned the district court to review the INS's decision. *Id.* The district court issued an order to show cause as to why the

petition should not be dismissed for lack of subject matter jurisdiction pursuant to 8 U.S.C. § 1252(g). *Id.* Based on *Abboud,* the parties agreed the court had jurisdiction, and the court concluded § 1252(g) did not strip it of jurisdiction to hear the matter. *Id.*

On appeal, the Sixth Circuit *sua sponte* raised again the issue of subject matter jurisdiction. *Id.* The appellate court did not reverse the district court's determination regarding the scope of § 1252(g) but focused instead on the restrictions in § 1252(a)(2)(B)(ii). *Id.* at 619 n. 1. The court did not find persuasive the district court decisions in *Mart* and *Shanti.* The court held the plain language of § 1252(a)(2)(B)(ii) unambiguously provides the court lacks jurisdiction to review any discretionary decisions of the Attorney General without restrictions. *Id.* at 619. The Sixth Circuit explained the district courts' reliance on the title of § 1252 to restrict the scope of the statute in *Mart* and *Shanti* was inconsistent with the canon of statutory construction that prohibits a court from using the title of a statute or a statutory section to " 'undo or limit' " the plain meaning of the statutory language itself. *Id.* (quoting *Trainmen v. Baltimore & Ohio R.R.,* 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947)).

In addition, the court noted § 1252 "addresses a 'multitude of jurisdictional issues, including ones that are collateral to the review of a final order' " of removal. *Id.* at 619–20 (quoting *Van Dinh v. Reno,* 197 F.3d 427, 432 (10th Cir.1999)). The court, therefore, held the title of § 1252 "does no more than indicate the provisions in a general manner" and may not create an ambiguity in the otherwise plain statutory language. *Id.* at 620.

Although the Sixth Circuit stated it need not address the legislative history of the statute because the statutory language was unambiguous, the court, nonetheless, examined the legislative history because the courts in *Mart* and *Shanti* had relied on legislative history to limit the scope of § 1252. *Id.* The court was not troubled by Congress's failure to list specifically each of the many discretionary decisions that were rendered unreviewable by § 1252 and held Congress's silence on the issue could not restrict the plain meaning of the unambiguous language in § 1252(a)(2)(B)(ii). *Id.*

As noted, the majority of courts that have addressed the scope of § 1252 have determined it strips the district courts of jurisdiction to review final agency decisions other than circuit court review of final orders of removal. *See, e.g., McBrearty v. Perryman,* 212 F.3d 985 (7th Cir.2000) (the "door closing statute" prevents the court from reviewing the INS's refusal to adjust the plaintiffs' status to that of lawful permanent residents pursuant to § 1255); *Van Dinh,* 197 F.3d at 432 (the discretionary decision to transfer aliens from one facility to another and the correlative discretionary decision to grant or to deny relief from such a transfer are discretionary decisions that are not subject to judicial review); *Nyaga v. Ashcroft,* 186 F.Supp.2d 1244 (N.D.Ga.2002) (§ 1252 precludes district court review of INS actions or decisions regarding an application for adjustment of status, but not a failure to act); *Saccoh v. Immigration and Naturalization Serv.,* 24 F.Supp.2d 406 (E.D.Pa. 1998) (court lacks subject matter jurisdiction to review INS decision to deny an extension of voluntary departure because it is a discretionary decision). In fact, one district court expressly held courts have jurisdiction to review the INS's decision to revoke prior approval of a visa petition for good and sufficient cause pursuant to 8 U.S.C. § 1155. *Systronics Corp. v. Immigration and Naturalization Serv.,* 153 F.Supp.2d 7 (D.D.C.2001).

This Court finds persuasive the reasoning of these latter cases. The Court concludes the plain meaning of the statutory language in § 1252(a)(2)(B)(ii) is clear and unambiguous: No court shall have jurisdiction to review any discretionary decision of the INS. The statute's language only becomes ambiguous if the Court examines the title of § 1252. The title of the statute, however, cannot create an ambiguity or limit the plain text of the statutory language. *See Trainmen,* 331 U.S. at 528–29, 67 S.Ct. 1387. The Court respectfully disagrees with the *Mart* court's determination not to follow this general rule on the ground that limitations on jurisdiction are strictly construed. To strictly construe a statute, the courts, nonetheless, must rely on the same general rules of statutory construction and cannot use the concept of strict construction in and of itself to justify the expansion or limitation of plain, unambiguous text. In addition, the Court must give due consideration to the fact that federal courts are courts of limited jurisdiction and can decide only those cases that the Constitution or Congress authorizes them to adjudicate. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Thus, the Court must take care not to read ambiguities into provisions regarding jurisdiction that are not present on the face of the statute.

Because the Court concludes the plain meaning of the statute is clear on its face, the Court need not examine the legislative history of the statute. To the extent the legislative history is applicable, the Court concludes nothing in the legislative history alters the Court's interpretation of the plain meaning of the statutory language because the legislative history does not address directly the applicability of the limitations on judicial review found in § 1252(a)(2)(B)(ii) except in the removal context. In addition, the Court determines the legislative history cited by the court in *Mart* does not undercut the Court's conclusion. The House Conference Report merely states judicial review of a final order of removal under § 1252(a)(1) is consistent with judicial review of a final order of removal under former § 1105a. The House Conference Report does not indicate judicial review of decisions other than final orders of removal remains unchanged under IIRIRA. Accordingly, the Court concludes the legislative history does not affect the Court's analysis of the plain meaning of § 1252(a)(2)(B)(ii).

Based on the foregoing, the Court concludes the statutory text of § 1252(a)(2)(B)(ii) is unambiguous on its face. Section 1252(a)(2)(B)(ii) expressly precludes judicial review of discretionary decisions of the Attorney General made pursuant to his authority under the INA. The INS's determination to revoke for good and sufficient cause its prior approval of Plaintiff ANA's immigrant visa petition on behalf of Plaintiff Yu was a discretionary decision. The Court, therefore, lacks subject matter jurisdiction to review that decision pursuant to § 1252(a)(2)(B)(ii). Accordingly, the Court grants Defendants' Motion to Dismiss for lack of subject matter jurisdiction and dismisses this action without prejudice.

## II. Committed to Agency Discretion by Law

Defendants also argue the Court lacks subject matter jurisdiction to review the INS's decision to revoke its prior approval of Plaintiff ANA's immigrant visa petition on behalf of Plaintiff Yu because that decision was "committed to agency discretion" and, therefore, is unreviewable pursuant to 5 U.S.C. § 701(a)(2). As noted, the APA authorizes the federal courts to review certain agency decisions. The APA, however, does not grant the federal

courts subject matter jurisdiction to review agency decisions that are (1) made pursuant to a statute that expressly precludes judicial review or (2) committed to agency discretion by law. 5 U.S.C. § 701(a). Because the Court concludes 8 U.S.C. § 1252(a)(2)(B)(ii) expressly precludes judicial review of the INS's revocation decision, the Court need not reach the question whether the decision also is unreviewable as a decision committed to agency discretion under § 702(a)(2).

### CROSS–MOTIONS FOR SUMMARY JUDGMENT

■■■ The parties agree there are no genuine issues of material fact, and each party contends it is entitled to judgment as a matter of law on the factual record presented. The parties appear to agree the Court should reach the merits of their summary judgment motions and review the INS's decision to revoke its prior approval of ANA's immigrant visa petition even if the Court concludes it lacks subject matter jurisdiction over this action. The Court, however, has no power to do so.

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.

*Axess Int'l, Ltd. v. Intercargo Ins. Co.,* 183 F.3d 935, 943 (9th Cir.1999) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotations and citations omitted)). It would be error for the Court to discuss the merits of a party's claim or defense after it determines it lacks subject matter jurisdiction over the action. *See id.* The Court, therefore, does not reach the merits of the parties' cross-motions for summary judgment and denies those motions as moot.

### CONCLUSION

For the above reasons, the Court concludes it lacks subject matter jurisdiction. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss, **DENIES as moot** the portion of Defendants' Motion regarding summary judgment, **DENIES as moot** Plaintiffs' Motion for Summary Judgment, and **DISMISSES** this action **without prejudice.**

IT IS SO ORDERED.